CASE 51.—ACTION BY CITY OF LEXINGTON AGAINST W. T. WOOLFOLK TO COLLECT THE COST OF A STREET IMPROVEMENT.—May 13, 1910.

## City of Lexington v. Woolfolk.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for defendant, plaintiff appeals.—Affirmed.

1. Pleading—Admissions by Demurrer.—On demurrer to an answer, its allegations are to be taken as true.

2. Municipal Corporations—Street Improvements—Action for Cost—Limitations.—Act April 19, 1890 (Acts 1889-90, c. 902), amending Lexington city charter, provides that the cost of of a street improvement shall be borne two-thirds by the owner of abutting property, and one-third by the city, unless he requests the adoption of the "10-year plan," in which event he pays the whole cost in installments, for which the city issues bonds and pays interest thereon. Held, that in absence of request therefor, the adoption of such 10-year plan did not extend the limitation period beyond 5

years from completion and acceptance of the work, and the city's cause of action under such act was barred in 5 years from its accrual, pursuant to Ky. St. 1903, section 2515, barring in that time liability to pay for street improvements.

3. Municipal Corporations—Cost of Street Improvements—Liability of Abutting Owners.—Under Acts 1894, c. 100, section 22, providing that second class cities may by ordinance provide for construction or reconstruction of streets, etc., but, when original construction is to be made with brick or other paving, it shall be only on petition of the owners of at least two-thirds of the front feet of property abutting on the improvement, the council could not order the original construction of a street with brick without a petition, and without a petition abutting owners are not liable thereunder for any part of the cost.

4. Municipal Corporations—Second Class Cities—Statutory Provisions as to Government.—The Acts of 1894 for the government of second class cities superseded all other acts. and expressed the whole law on the subject, except as old acts were continued in force by its provisions.

5. Municipal Corporations—Cost of Street Improvements—Liability of Abutting Owner.—The Acts of 1894 for the government of second class cities provided that the repeal of any law thereby should not affect any right or liability acquired or accrued thereunder, that the act should not affect any right, lien, or liability accrued, established, or subsisting under and by virtue of previous charters, amendments thereto or ordinances passed thereunder, and that it should not affect the right or liability acquired or accrued under previous charters, amendments thereto, or ordinances passed thereunder, on the part of the city or any person, etc.   Held, that this continued old laws in force as to existing rights and liabilities, which were entirely unaffected, so that liabilities of abutting owners for the cost of a street improvement related back to the passage of an ordinance under Act April 19, 1890 (Acts 1889-90, c. 902), ordering the work done, and the rights of the parties must be determined thereby, and the provisions of the act of 1894 as how the assessment and payment of the cost of an improvement shall be made do not apply to work which that act does not authorize the council to have done.

ALLEN & DUNCAN for appellant.

GEO. C. WEBB for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

By an act amending the charter of the city of Lexington approved April 19, 1890 (Acts 1889-90, c. 902), it was provided as follows: "The general council may provide by ordinance for the construction or reconstruction of the public streets with granite, asphalt, brick, or other material upon a petition of the owners of a majority of the front feet on any street or block,\asking that such improvement be made, or without a petition, two thirds of the members elect of the general council voting therefor. All petitions for the construction or reconstruction of a street or alley shall be advertised for one week in the newspaper selected for that purpose. Whereupon, it shall be the duty of the city surveyor to prepare and submit to the general council accurate plans, specifications and estimates of the cost of the proposed improvement. The general council shall then provide by ordinance for the construction or reconstruction of said street, and order a special assessment to be made by the city assessor of the property fronting on said street, block or alley, exclusive of the improvements, and give the usual published notice to the property holders to call and examine said assessment. After the expiration of the time mentioned in said public notice, and the general council and the appropriate committee having heard and acted on all complaints of property holders in regard to said special assessment, the general council shall confirm the assessment and levy a special tax on said property sufficient to pay for two thirds of the entire cost of said construction or reconstruction, the remaining one third of the cost to be paid by the city. Said special taxes shall be a lien on the assessed prop-

erty, and their collection shall be made and enforced
as other taxes, and the mayor and general council
are hereby authorized to issue for and in behalf of
the city of Lexington, street bonds on such time as
may be deemed best, bearing interest at not exceed-
ing six per cent. per annum, free from municipal
taxation, and of such denominations as the general
council may deem best; said bonds or their proceeds
to be used for the exclusive payment of the city's
part of the cost of constructing or reconstructing the
streets and alleys of the city under the provisions of
this ordinance, and such bonds shall only be issued
to pay for the work actually completed. The general
council may at the request of parties liable for special
taxes levied for the construction or reconstruction of
streets, lend such parties the credit of the city for a
period not exceeding ten years, and provide for the
payment of said work by issuing street bonds, as pro-
vided in this section, for an amount sufficient to pay
the entire cost of said improvements. The tax levied
for the construction or reconstruction shall then be
divided into ten equal annual payments, payable one-
tenth each year, and so levied on the assessed value
of the property liable for said improvements. Said
special taxes on this ten-year plan shall be a lien on
the property on which they are levied and their col-
lection made and enforced as other taxes. Said taxes
when collected shall be used exclusively in paying
the street bonds issued on that street or block. In
cases where the general council lends the credit of
the city in paying the cost of construction or recon-
struction, the city shall be liable only for the interest
on said bonds, the property paying the entire cost of
the improvement. The general council shall make all
necessary regulations and prescribe the proper forms

to be used in carrying out the provisions of this section.''

It will be observed that under this act there could be an original construction or reconstruction of a street upon the petition of those owning ·a majority of the abutting front feet, or the general council could without a petition order either an original or a reconstruction, upon the vote of two-thirds of the members-elect. The assessor was required to make a special assessment of the property abutting on the improvement, and the cost of the improvement was to be paid by the property owners according to the assessed value of the property; two-thirds of the cost of both an original or a reconstruction was to be paid by the property owner, and one-third by the city. But the city was authorized to lend its credit for a period of 10 years to the property holders at their request, and in this event the entire cost of the improvement was to be paid by the property holder in 10 annual installments, the city paying the interest. While the act was in force the general council, by an ordinance which became effective on December 29, 1893, ordered the reconstruction with brick of High street from Rose street to Maxwell street. The city surveyor, as directed by the ordinance, prepared plans and specifications which were approved by the council on February 9, 1894, and on February 16, the council passed an ordinance ordering the work done, and directing the mayor to advertise for bids. The advertisement was made; the contract let; the work done. It was accepted by the city; the city paid for the work, and assessed the cost against the property owners on the 10-year plan. On June 26, 1903, this suit was brought by the city against W. T. Woolfolk to enforce a lien on his property for the install-

ments of the cost then past due. He filed an answer in which he pleaded, among other things, that he did not request the city to lend him its credit, and set up the five-year statute of limitation, on the ground that the city's cause of action had accrued more than five years before the suit was brought. The city demurred to the answer; its demurrer was overruled; and, it having stood upon its demurrer, its petition was dismissed, and it appeals.

We had this precise question before us in Lexington v. Crosthwait, 78 S. W. 1130, 25 Ky. Law Rep. 1898, which was a suit like this by the city against a taxpayer, where the property owner had not requested the city to lend him its credit. The court said: "Unless the property owner requested the city to extend the 10-year credit, and to issue its bonds for the cost of the improvement, the statute of 1890 made two-thirds of the cost, and no more, a charge against the abutting property, and made it due when the work was completed and accepted. The right to enforce the payment then accrued to the contractor. The city could not, without the request of the lot owner, enlarge his liability by increasing it and extending the time of its payment for 10 years. Its action in attempting to do so in this case was void. The liability to pay for street improvements is one created by statute, and is barred unless enforced within five years from its accrual. Section 2515, Ky. St." On the demurrer to the answer its allegations are taken as true. It must therefore be taken as true here that the defendant did not request the city to lend him its credit; and, this being true under the authority of the case referred to, the city's cause of action under the act of 1890 was barred after five years from the time it accrued.

It is insisted, however, that the case is taken out of the rule announced in that case by the act of 1894 for the government of cities of the second class, and the ordinances passed thereunder.  In section 22, art. 4, of that act (see Acts 1894, p. 260) it was provided as follows: "The general council may by ordinance provide for the construction or reconstruction of the streets, alleys, and other public ways and sidewalks, or parts thereof, of the city upon the petition of the owners of a majority of the front or abutting feet of the real estate abutting on such proposed improvement, or without a petition by a vote of two thirds of the members-elect of each board of the general council. But when such original construction is to be made with brick, granite, asphalt, concrete or other improved material or paving, it shall be made only upon the petition of the owner or owners of at least two-thirds of the front or abutting feet of real estate abutting on such improvement.  Such original construction of public ways shall be made at the exclusive cost of the owners of the real estate abutting on such improvement; and such reconstruction of such ways shall be made one-half at the cost of the owners of the real estate abutting on such improvement, and the other half at the cost of the city.  Such cost of construction and reconstruction which is to be paid by the property owners shall be apportioned among and assessed upon the lots or parcels of real estate abutting on such improvement according to the number of front or abutting feet." It was further provided in section 27 as follows: "The general council may provide that any such construction or reconstruction shall be made on the ten-year plan; and thereupon, when any such improvement had been completed and accepted a notice shall be given

by publication in the official newspaper requiring the
property owners to pay the local taxes levied on their
property; and if any such local taxes be not paid by
such property owners, then to provide a fund for the
immediate payment of such portion of the entire cost
of such improvement or reimprovement the abutting
property holder shall be liable for, but may not pay
in cash, in conformity with said notice, the general
council is authorized to borrow money at a rate of
interest not exceeding six per centum per annum, in
anticipation of the collection of a special tax or as-
sessment for such improvement or reimprovement,
from such property holders, and to issue the bonds
of the city therefor in the manner and form herein
provided, pledging the faith and credit of the city
for the payment of the principal and interest thereof.
Said bonds shall be divided into ten series each series
to be paid respectively in one, two, three, four, five,
six, seven, eight, nine and ten years after date.''
Under this act the general council could not order an
original construction with brick without a petition
of those owning two-thirds of the abutting feet of real
estate; the cost of the improvement was apportioned
according to the number of front feet abutting on the
street; the entire cost of an original construction was
chargeable to the abutting property, and only one-
third of the cost of a reconstruction. The city was
authorized to adopt the 10-year plan without a re-
quest from the property holders, but they were first
given an opportunity to pay their assessments in
cash.

After this act was passed, and before a contract
had been made for the doing of the work, the council
accepted the bid of the contractor by an ordinance
approved March 28, 1894, and by an ordinance ap-

proved March 29, 1894, it amended the ordinances approved February 16, 1894, so as to show that the work was to be done under the act of 1894, and to be paid for as directed therein. In the subsequent proceedings of the council the work was treated as having been done under the act of 1894, and the work when accepted was paid for by the city on the idea that under that act no request from the property holder was necessary, and that the city had the right to put into effect the 10-year plan when the property holders failed to pay in cash their assessments. All these facts are set out in the petition, and in the answer the defendant pleaded further that High street, within the limits referred to, had up to this time been the property of a turnpike company, and had been kept up by it; that it had not been improved at the cost of the property owners; that there was no petition from the property owners for the improvement; and that the work ordered to be done was an original construction of the street which the council, under the act of 1894, had no authority to order without a petition from the property owners, where the street was to be constructed with brick. Under the facts stated in the answer, which are admitted by the demurrer, there is no question that the work ordered to be done was an original construction. McHenry v. Selvage, 99 Ky. 234, 35 S. W. 645, 18 Ky. Law Rep. 473; Mackin v. Wilson, 45 S. W. 663, 20 Ky. Law Rep. 219; Lindsey v. Brawner, 97 S. W. 1, 29 Ky. Law Rep. 1236; Catlettsburg v. Self, 115 Ky. 669, 74 S. W. 1064, 25 Ky. Law Rep. 161, and cases cited.

That the property owner is not liable where the city makes an original construction of this character without a petition from the property owner was ex-

pressly decided in Covington v. Brinkman, 79 S. W. 234, 25 Ky. Law Rep. 1949. The court there said: "Under this section of appellant's charter the council had no power to order the original construction of a sidewalk by brick at the cost of the abutting owners until they had been petitioned by the owners of at least two-thirds of the front feet of the real estate abutting upon such improvement. In this case there was no petition. The ordinance was therefore void." See, also, Richardson v. Mehler, 111 Ky. 408, 63 S. W. 957, 23 Ky. Law Rep. 917.

It follows that the council was without authority to order the work done under the act of 1894, but it is insisted that the council had the authority to have the work done under the act of 1890, and that when the act of 1894 became effective, they could require it to be paid for under the provisions of that act. If the act of 1894 could be regarded as an amendment of the act of 1890, there would be much force in this, but manifestly that was not the purpose. The act of 1894 was intended for the government of cities of the second class. It superseded all other acts. It expressed the whole law on the subject, except as the old acts were continued in force by its provisions. To prevent confusion it was provided as follows: "The repeal of any law by the provisions of this act shall not in any wise be so construed as to affect any right or liability acquired or accrued thereunder, by or on the part of the city or any person or body-corporate; and this act shall not in any manner affect any right, lien or liability accrued, established or subsisting under and by virtue of previous charters or amendments thereto or ordinances passed thereunder; but such right, lien or liability shall be enforced and such action or proceeding shall be car-

ried on in all respects as if this act had not taken effect; nor shall this act be in any wise so construed as to affect the right or liability acquired or accrued under previous charters or amendments thereto or ordinances passed thereunder, on the part of the city or any person or body-corporate.'' The plain purpose of this provision was to continue the old laws in force as to existing rights and liabilities. As to these matters the old laws were entirely unaffected by the new, but things stood ''in all respects as if this act had not taken effect.'' The liability of the parties for the work relates back to the passage of the ordinance ordering it to be done; and, this having been passed under the act of 1890, the rights of the parties must be determined by that act. The council under the act of 1894, without a petition from the property owners, had no authority to have the street constructed with brick. The provisions of that act as to assessments are prospective in their operation. They relate entirely to the improvements which the council had authority to order under that act. It was the intention of the Legislature, not that the act of 1894 should be read into the act of 1890, but that all rights under the act of 1890 should remain as though the act of 1894 had never been passed. The provisions of the act of 1894 as to how the cost of an improvement shall be assessed, or how it shall be paid for relate to such improvements as that act authorizes to be made. The provisions of that act as to how the assessment and payment of the cost of an improvement shall be made have no application to work which that act does not authorize the council to have done. As the work which is here in controversy was not authorized by the act of 1894, its provisions as to how the cost of other work shall be assessed and paid for cannot be applied.

It is insisted that in the case of the City of Lexington on appeal, 96 Ky. 258, 28 S. W. 665, 16 Ky. Law Rep. 467, this court upheld the validity of the bonds issued by the city to pay for the street improvements made under the act of 1890, and that this opinion is inconsistent with the conclusion above reached. We cannot see that this is true. No question of limitation was made in that case. No question was presented there as to what would be the rights of the city if it did not follow the act of 1890, or lend its credit to property owners who had not requested it. The whole trouble here grows out of the fact, not that the property owner was not responsible for the improvement when made, but that he has been released from liability by limitation from the city sleeping on its rights. In Lexington v. Bowman, 119 Ky. 840, 84 S. W. 1161, 27 Ky. Law Rep. 286, we held that a taxpayer who, knowing that the city was acting on the idea that he had requested the 10-year plan, failed to object, and paid without objection two annual installments assessed on that basis, was estopped to deny that he had made such request, and could not rely on the 5-years statute of limitation. But in this case the allegations of the answer are admitted on the demurrer. There is no plea of estoppel.

Judgment affirmed.