## Kentucky Hydro-Electric Company v. Reister, et al.

## Kentucky Utilities Company v. Same.

### (Decided October 15, 1926.)

### Appeals from Shelby Circuit Court.

1.  Eminent Domain—Argument of Counsel in Condemnation Proceedings, Though Improper, Held Not Reversible Error, where Objection Thereto was Sustained and Jury was Warned Not to Consider it.—Argument of counsel, in proceeding to condemn land for electric transmission lines, that plaintiff did not dare ask

witness what he got for his land and that boys would climb towers constructed, though improper, was not reversible error, where objection thereto was sustained and jury was warned not to consider it.

2. Eminent Domain—Judgments Totaling $3,200.00 Recovered in Proceedings to Condemn Easement for Electric Transmission Lines, Held Excessive.—Judgments totaling $3,200.00, recovered in proceedings to condemn easements for transmission lines, based chiefly on opinions of witnesses as to value of land taken and' damage done, held excessive..

3. Eminent Domain.—Owners of land condemmed failing to appeal from judgment of county court cannot raise question of condemnor's right of eminent domain on condemnor's appeal from circuit court.

4. Eminent Domain—Owners of Land Entitled to Diminution in Value of Land, by Condemnation of Easement, to be Paid in Money, and Not in Benefits (Constitution, Section 242).—Owners of land are entitled to diminution in value of land, caused by condemnation of easement over land, to be paid them in money and not in benefit, in view of Constitution, section 242.

5. Eminent Domain—Admission of Evidence as to Probability of Owners of Land, Condemned for Easement for Transmission Lines, Being Able to Obtain Light and Power, Held Error.—In proceedings to condemn easement for electric transmission lines, it was error to permit introduction of evidence to show probability of owners of land being able to obtain light and power.

6. Eminent Domain.—Damages to farm caused by condemnation of easement for transmission lines is determined by difference between market value before and after easement was taken.

7. Evidence—Testimony of Witness, Unable to Give Facts on which he Based Estimate, as to Depreciation in Value of Land by Condemnation of Easement, should be Disregarded.—Testimony of witness unable to give facts on which he based estimate as to difference between value of land, before and after easement was condemned, should be disregarded.

8. Appeal and Error—Verdict Based on Witnesses' Opinions is Not Accorded Same Sanctity as Verdict Based on Facts, which will Rarely be Disturbed.—Verdict based on opinions of witnesses, not founded on supporting facts, is not accorded same sanctity as verdict based entirely on facts, which will rarely be disturbed.

9. Evidence.—Competency of opinion evidence as to salable value of property is based on witness' knowledge of facts, rather than statement that he knows salable value.

10. Eminent Domain—In Determining Value of Land Condemned, Owner should be Allowed to Show all Facts Existing Before and After Taking which Seller and Purchaser would Adduce.—In determining value of lands condemned, owners should be allowed to show all facts existing before the taking which a seller would adduce in making a sale, and all facts resulting from the taking

which a purchaser would call attention to in an effort to beat down the price.

ROBERT G. GORDON, BRUCE, BULLITT, GORDON & LAURENT and TODD & BEARD for appellants.

BECKHAM, GILBERT & MATTHEWS for appellees.

OPINION OF THE COURT BY COMMISSIONER DRURY— Reversing.

Condemnation proceedings were begun by the Kentucky Hydro-Electric Company and the Kentucky Utilities Company against the appellees, in which proceedings the appellees recovered a judgment against the Kentucky Hydro-Electric Company for $2,000.00, $425.00 being for damage to the strip of land occupied by the towers of that company and $1,575.00 being for damage done to the remainder of the farm by the construction of its power line across it. They recovered a judgment against the Kentucky Utilities Company for $1,200.00. $240.00 of it being for damage to the the strip occupied by the pole line and $960.00 for damage to the rest of the farm, by the construction of the pole line across it. While these cases were begun separately, they were tried together in the circuit court and we shall dispose of them in one opinion.

The appellees have a farm of 160 acres, upon which each of these companies is seeking to impose an easement. The Hydro-Electric Company desires to have an easement upon a strip of land 2,472 feet long on which it proposes to erect three steel towers, each occupying a ground space not more than 25 feet square, these towers to be not less than 600 feet apart, whereon it is to place cross-arms, and to these, in turn, to attach wires for the transmission of high voltage electric currents and other wires to be used for telephonic communication, the width of the space occupied by these wires not to exceed 25 feet.

The easement desired by the Kentucky Utilities Company is to be imposed upon a strip 1,900 feet long, on which it is to erect six poles, 300 feet apart, to which it will attach cross-arms, and to these it will attach wires for the transmission of high voltage electric currents, and other wires for telephonic communication. The width of the space occupied by its wires shall not exceed 10 feet. This company, in addition to the right to erect and maintain these six poles, also has the right to erect necessary

guy poles and guy wires. Each company is to have the right on a strip 50 feet wide, or 25 feet on each side of the center line, to trim, cut or remove any trees, except orchard and fruit trees, also the right of ingress and egress for making repairs. Each company also has the right to cut and remove any and all trees now or hereafter growing anywhere on this farm that are of sufficient height that falling directly to the ground they could strike any of these wires. No buildings may be erected on a strip 75 feet wide or 37½ feet from the center line of each of these easements. All wires shall be placed at least 20 feet from the ground. These companies are to remain liable for all damage to fences, crops, animals and other property done anywhere on the farm in the construction and maintenance of these lines, and for any damage done through their negligence. Appellees are to continue to use, occupy and enjoy all of this land not occupied by the poles and towers, just as fully as heretofore, subject only to the limitations mentioned.

Both companies are complaining of the misconduct of appellees' counsel in saying these things in the argument to the jury:

"Gentlemen, I want to tell you of a little occurrence that took place between me and Mr. Will Stout the other day. Mr. Stout said to me, 'Gilbert, did you ever see a damned fool?' 'Yes, 'I said, 'frequently when I look into the mirror.' Then he said to me, 'Look at me, and see another one.' Bill Stout has this line across his land and sold the privileges therefor to this plaintiff, and he testified that Reister's damage was $4,600.00, and the plaintiff did not dare ask him what he got for his land."

And, "There are boys on these farms, and however careful and obedient they may be, and however good they are, they will climb on these towers and get into danger."

This was improper, but as the court sustained an objection and warned the jury not to consider it, we do not regard it as reversible error.

These companies offered to show what they had paid other landowners for similar rights across their farms. The court refused to admit that evidence, and it is insisted that this was error. This question is settled in the case of Kentucky Hydro-Electric Co. v. Woodard, this day decided.

Their other complaint is that the verdict is excessive, and this we find to be more meritorious. As these two cases were tried together, the evidence as to the value of the strips taken and the damages done were usually not separated by the witnesses. One witness for the company placed his total estimate of the value of the rights taken and the damage done at $160.00. Another of their witnesses estimated it at $1,125.00. The general average of all of their witnesses puts it over $800.00, while for the appellees the estimates ran from about $3,000.00 to about $7,000.00, and the average of appellees' witnesses is close to $4,500.00. While we are sure that the appellees do not want these lines on their farm at all, yet all property is held subject to the right of the state to take it for a public use. The appellees insist that this is not a public use, and that these companies have not the right of eminent domain; but as the appellees have not appealed from the judgment of the county court that question can not now be raised by them. See Ky. Hydro-Elec. Co. v. Woodard. That brings us back to the question raised by the companies as to the excessiveness of the verdict. The appellees must be neither enriched nor impoverished by the taking of these easements. If by the taking of them the market value of their farm is diminished, they are entitled to recover of these companies such a sum as will equal that diminution. This difference must be paid to them in money, not in benefits. See sec. 242, Constitution of Kentucky; L. & E. Ry. Co. v. Napiers' Heirs, 160 Ky. 579, 169 S. W. 1017; L. & N. R. R. Co. v. Chenault, 214 Ky. 748, 284 S. W. 379. Therefore, the companies should not have been allowed to introduce evidence tending to show the probability of appellees' being able to obtain light and power. The testimony relative to the damage is by no means satisfactory. This farm is shown to be worth about $150.00 per acre. The witnesses seemed to be agreed that these lines traversed the most valuable and productive part of this farm. However, no buildings were near the line, and while this land may be more valuable, acre for acre, than other parts of the farm, yet when the value of the buildings is considered it is doubtful if one acre where these lines are is any more valuable than an acre elsewhere on the farm. If these entire strips had been taken, they would have only amounted to 7½ acres or to $1,125.00, but the strips were not taken. On the contrary, the appellees are to use and cultivate them.

The judgments totaled $3,200.00, which is clearly excessive. The question was, what is the difference between the market value of this farm just before these easements were taken and its market value just after the easements were put upon it? That was a question that should have been asked the witnesses. When they answered, they could then have been asked upon what they based that estimate, and if the witness could give no facts upon which his estimate is based, could give no reason for the difference in the market value, his estimate should be disregarded. As it is not proposed that this farm shall be sold, its market value is a matter of opinion, as well as a matter of fact, or to be more exact, it is a matter of opinion gathered from relevant facts. Where a verdict is based entirely upon facts, and shows the jury believed the facts to be as testified by one set of witnesses, and not to be as testified by another, we are very rarely persuaded to disturb the jury's finding, but we do not accord the same sanctity to the verdict of a jury evidently based on the opinions of the witnesses not founded on supporting facts. These men were not expert witnesses, but rather what is termed skilled witnesses. They were men who for a reasonable time, have bought, sold, managed, valued, lived on or cultivated farms and farm lands. Such men are supposed to possess a superior knowledge of farm values, which enables them to understand, where one without such knowledge could not, the effect of what they have seen and observed upon the value of this farm.

"In general, a witness as to value, should, as far as this is practicable, detail the facts upon which his estimate, inference, conclusion or judgment is based. . . . The estimate should be rejected where the basis for a test as to its reliability is not furnished by a statement of facts on which it is based or where the basis of fact does not appear to be sufficient." 22 C. J. 575.

That it is the witness' knowledge of facts rather than his statement that he knows the salable value of property that makes his evidence competent is shown by the case of Vaughn v. City of Corbin, 170 Ky. 426, 186 S. W. 131, wherein we said:

"Housekeepers residing in the immediate vicinity, whether they knew the salable value of property

or not, were competent to testify as to the damage, if any, to the use and occupancy of this property by the acts of the city complained of, and witnesses owning property and others who were familiar with the values of the property in that vicinity, although they themselves had not bought or sold many pieces of property, were competent to testify upon the question of diminution in the salable value of the property from the acts complained of."

In condemnation proceedings landowners should be allowed to show all facts existing before the taking which a seller would adduce in attempting to make a sale and all facts resulting from the taking to which a purchaser would call attention in an effort to beat down the price. The evidence in this case was, to a large extent, the opinions of witnesses who gave but few facts upon which these opinions were based. Necessarily the extravagance and groundlessness of these opinions is reflected in the verdict. We had before us a very similar verdict to this in the case of L. & N. R. R. Co. v. Burnam, 214 Ky. 736, 284 S. W. 391, which we held to be excessive, and much of our reasoning there will apply here. The judgment in these cases must be reversed on this ground.

The attorneys for the appellees in their brief have discussed at some length the element of danger which they say should have been considered to the extent that it may injure the market value of the land. We have considered this question carefully, and a thorough discussion and disposition of it will be found in the case of Kentucky Hydro-Electric Co. v. Woodard, *supra*.

The judgment is reversed, and defendants are awarded a new trial, to be had in conformity to this opinion.