## Board of Councilmen of City of Frankfort v. Brammell.

(Decided May 10, 1927.)

(Rehearing Denied with Modification, June 21, 1927.)

### Appeal from Franklin Circuit Court.

1. Eminent Domain.—In action for damages to property by lowering grade of street, instruction not to consider any enhancement or increase in value thereof, resulting from improvement, in estimating fair market value of property thereafter, held erroneous.

2. Eminent Domain.—Owner of private property taken for public uses must be paid value thereof, without deducting enhancement of value of remainder by improvement, but jury may set off consequential advantages and disadvantages against each other.

3. Eminent Domain.—City, changing grade of street, is liable to owner of adjoining property only for consequential damages, consisting of difference between fair market value before and after improvement, less amount paid by him for improvement.

4. Eminent Domain.—Owner is compensated for land taken for street when street is established, and if grade thereof is afterwards changed can only ask that he be made whole; such change being necessarily incidental to original taking.

5. Eminent Domain.—Lowering of grade of street and construction of improved street on new grade constitute one improvement, and cost of both is included in assessment paid.

6.  Eminent Domain.—Market value of abutting property after change
    in street grade is what owner, not required to sell, would take,
    and buyer, not required to buy, would pay, therefor, and purposes
    for which it has been or may reasonably be used may be shown
    in determining such question; but evidence as to its value in
    owner's business, before or after improvement is inadmissible.

7.  Eminent Domain.—All persons who buy property in a city take
    it subject to city's right to make necessary changes of street
    grades.

8.  Municipal Corporations.—City, being bound by law to keep its
    streets in reasonably safe condition for public travel, may close
    streets for repairs or change of grade, and is not liable to owner
    of abutting property for contractor's negligence.

9.  Municipal Corporations.—Ordinance requiring owners of certain
    lots to lay sidewalks at grade adopted by city council did not fix
    grade of street.

10. Eminent Domain.—In action for damages to adjoining property
    by lowering of street grade, city council's answer, denying that
    it had established grade many years before plaintiff's purchase of
    property, by constructing and improving street and keeping in
    good repair continuously, held not a sufficient denial, especially
    in view of averment therein that ordinance provided for regrading
    of street.

11. Municipal Corporations.—In action for damages to abutting prop-
    erty by lowering of street grade, testimony of mayor and mem-
    bers of city council as to what they intended to do in regard to
    sidewalk in front of plaintiff's property was properly excluded as
    immaterial; city being bound only by official action of council,
    which can speak only by its record.

12. Eminent Domain.—It is property owner's duty to minimize dam-
    ages to property by change in street grade, if possible with reason-
    able expenditure.

    F. M. DAILEY for appellant.

    JOHN S. CARROLL for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

In 1925 T. A. Brammel owned in fee a lot fronting
80 feet on Todd street, on which he was conducting the
business of buying and selling milk and dairy products.
He brought this action in March, 1926, against the city of
Frankfort alleging in his petition that many years prior
to his purchase of the property the city had established
the grade of Todd street by constructing and improving
it, and keeping it in good repair continuously, and that
the established grade of the street was such that the
surface of his lot was only four or five inches above
the surface grade of Todd street, and the entrance
thereto was suitable and safe; that by an ordinance

approved June 9, 1925, the city directed the improvement of Todd street and the re-establishment of the grade of the street; that the new grade so authorized necessitated the lowering of the street in front of his property from three to five feet; that the contract for the improvement was let to the Andrews Paving Company, who excavated Todd street in front of his property from three to five feet under the direct supervision of the defendant: that, when the improvement was completed, the costs of it was assessed against the adjoining property owners, and $565.52 was assessed against him; that he objected to the improvement and the excavation of the street, and despite his protests and objections the work was done, and as a result the surface of the street is now from three to five feet below the surface of the lot, and ingress and egress are difficult and dangerous, by all of which he was injured in the sum of $3,500.

In the second paragraph he alleged that he was conducting upon the property, in the name of the Sanitary Milk Company, a dairy business; that the defendant blocked off the street and closed the only entrance to his property, and kept it blocked off and closed against his protest for ——— days, during all of which time he was deprived of the free use and enjoyment of his property; that the improvement was negligent, and was done without any regard to his rights of ingress and egress to his property, to his damage in the sum of $1,000.

The defendant demurred to the petition and to each paragraph thereof. The demurrer was overruled. The defendant then filed answer, controverting the allegations of the petition. In the third paragraph it pleaded in substance that Brammell purchased his property after the ordinance providing for the reconstruction of the street had been introduced in the city council and had been laid over for another day for consideration. By the fourth paragraph it pleaded that the sidewalk in front of the plaintiff's property should be reconstructed and that it was the intention of the defendant to reconstruct it of concrete, after regrading the sidewalk in front of the plaintiff's property, and that it would do this as soon as the weather permitted, but had been unable to do it before by reason of the cold weather; the street having been finished in December and it not being practicable to work on the sidewalk after that. The circuit court sustained the plaintiff's demurrer to the third and fourth paragraphs of the answer. The case came on for trial. A

large amount of evidence was heard. The jury found for the plaintiff in the sum of $1,500. The city appeals.

The court, by instruction No. 1, told the jury in substance that, if the market value of plaintiff's property was diminished by reason of the lowering of the grade of the street, they should find for him the difference, if any, in the fair market value of the property just before it was generally known that the work would be done, and the fair market value of the property just after the work was done. Instruction No. 2 is in these words:

> "The court further instructs the jury that in making your estimate and arriving at the fair market value of the said property after the lowering of the grade of said Todd street in front of said property you will not consider any enhancement or increase in the value of said propery resulting from the improvement."

This instruction was erroneous and should not have been given. It is held under the Constitution that, when private property is taken for public uses, the owner must be paid the value of his property, and that any enhancement of the remainder of his property from the public improvement cannot be set off against the value of the property taken, but in these cases the jury is allowed to take a survey of the consequential advantages and disadvantages, and set off one against the other, finding for the owner the balance in his favor, if any, on subtracting the consequential advantages from the consequential disadvantages.

In this case the land for the street was taken when the street was made a public highway. The city was authorized to establish the grade of the street. If, after it once established a grade, it made a change in the grade, it is liable to the owner of the adjoining property for the consequental damages he suffers; but in such cases there is only presented the question of consequential advantages and disadvantages. Before the improvement was made the plaintiff had a property of a certain market value. After the improvement was made he had the same property, less what he had been required to pay for the construction of the improvement. He is made whole if he is paid the difference between the fair market value of the property before the improvement was made and its fair market value afterwards, less what he had paid for the improvement under the assessment by the

city. To illustrate: If appellant's property was worth $4,000 before and $4,500 after the improvement, and he paid $565 therefor, he is really out $65 (4,000+565—4,500). The court should have so instructed the jury.

The court has held in a long line of cases that, where a city reconstructs a street and lowers the grade, the measure of damages is the difference in the fair market value of the property just before and just after the improvement was made. Louisville v. Hegan (Ky.) 49 S. W. 532; Covington v. Taffee (Ky.) 68 S. W. 629; Henderson v. Winstead, 109 Ky. 328, 58 S. W. 777, 22 Ky. Law Rep. 828; Louisville v. Kaye, 122 Ky 599, 92 S. W. 554, 29 Ky. Law Rep. 116; Lexington v. Chenault, 151 Ky. 774, 152 S. W. 939, 44 L. R. A. (N. S.) 301; Dayton v. Rewald, 168 Ky. 398, 182 S. W. 931. But in these cases it did not appear that the owner had paid his share of the cost. To same effect, see 13 R. C. L. 108; 28 Cyc. 1074.

There is a fundamental distinction between the taking of property under section 242 of the Constitution and injury to property:

"But there is a manifest distinction between a taking of property and its incidental injury or destruction. In the latter case it is often impossible to determine in advance the extent of such injury." Chicago, St. Louis & N. O. R. Co. v. Sullivan, 24 Ky. Law Rep. 860. "There is a clear distinction under section 242 of the Constitution with reference to compensation to be paid for property taken for public uses and property which a public use injures or destroys." P. Bannon Pipe Co. v. I. C. R. R. Co., 203 Ky. 664, 262 S. W. 1112.

In this case there is no taking of appellee's property. In Broadway Coal Min. Co. v. Smith, 136 Ky. 725, 125 S. W. 157, 26 L. R. A. (N. S.) 565, land was taken in a proceeding to fix its value. The rule there declared applies to the case the court had before it. The question of consequential damages for an injury to property, where no property is taken, was not before the court. In Waller v. Morganfield, 178 Ky. 75, 198 S. W. 599; Id., 180 Ky. 56, 201 S. W. 459, as pointed out in the opinion, the plaintiffs under the instructions given below lost entirely what they had paid on the assessment against their property for the cost of the improvement. A new trial was granted. The language of that opinion, in so far as it

conflicts herewith, is disapproved. The owner is compensated for the land taken when the street is established. If the grade of the street is afterwards changed, the city is only exercising a right given it when the land was taken, and all the owner can ask is that he be made whole. It is not a case of an unwarranted act, but one necessarily incidental to the original taking of the property. The lowering of the grade of the street and the construction of the improved street on the new grade constituted one improvement. The new grade was an essential part of the new street. One is inseparable from the other. The two constituted one whole  The $565.52 which appellee paid included the cost of both.

On the trial of the case a large amount of evidence was taken on the value of the property in the plaintiff's business. In West Virginia P. & T. R. Co. v. Gibson, 94 Ky. 236, 21 S. W. 1055, 15 Ky. Law Rep. 7, the court thus stated the rule:

> "The rule seems to be that, in estimating the value of property taken for public use, the owner is entitled to the reasonable market value of the property, which value must be ascertained, not by what use the property has been actually applied, but with reference to its availability and adaptability for valuable uses, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future. The proper inquiry in such case is: What is its value, in view of any use to which it may be applied, and to all the uses to which it is adapted? See Mississippi, etc., Boom Co. v. Patterson, 98 U. S. 403 (25 L. Ed. 206); Lewis on Eminent Domain, section 479. The issue in such case is, not what the land is worth to the appellant, or how profitably it may use it in its business, nor the costs and expense that it would be compelled to incur in obtaining other property, or in fitting it for its business, if it failed to obtain that particular property."

This case was followed in Madisonville, H. & E. R. Co. v. Ross, 126 Ky. 143, 103 S. W. 330, 31 Ky. Law Rep. 584, 13 L. R. A. (N. S.) 420; Calor Oil & Gas Co. v. Franzell, 128 Ky. 732, 109 S. W. 328, 33 Ky. Law Rep. 98, 36 L. R. A. (N. S.) 456; Weis v. Commissioner of Sewerage, 152 Ky. 552, 153 S. W. 967; City of Dayton v. Rewald, 168

Ky. 398, 182 S. W. 931; Weitlauf v. Paducah & I. R. Co., 190 Ky. 143, 226 S. W. 388.

While there is some conflict of authority on the subject, the rule has been so often followed by this court that it is now not open to question. No one can tell how long the plaintiff will remain in business. He may quit any day. His property has a market value. The market value of his property before and after the wrong complained of is the measure of his damages, and is the only certain criterion which may be adopted as the court has said. To hold otherwise introduces into the inquiry speculative and uncertain elements, which have no place there. The question is: What would an owner, who did not have to sell, be willing to take for the property, and what would a buyer, who did not have to buy, be willing to pay for it? And in determining this question, the purposes for which the property had been or may reasonably be used may be shown.

The evidence as to the value of the property in the plaintiff's business before or after the improvement should be excluded as held in above cases. But evidence may be admitted as to the purposes for which the property was used, or for which it was adapted, and on all the facts its fair market value, before and after the improvement was made, is to be determined. The controlling facts are the fair market value of the property before and after the improvement. To illustrate: If the plaintiff owned a cottage, the fact that he made no use of it would be immaterial, except as a circumstance in fixing its fair market value. On the other hand, if the plaintiff, being an invalid, had great need for the cottage, its fair market value would still be the criterion.

As the case must be tried again, it is proper that other matters complained of should be determined, in order that there may be a fair trial on the return of the case to the circuit court, although, as the record is presented, these matters might not be ground for reversal. The circuit court should have sustained the plaintiff's demurrer to the second paragraph of the petition. The city has authority by law to make the necessary changes of grade in streets. All persons who buy property in a city take it subject to this right in the city.

The changing of the grade of the street, or the reconstruction of the street in any way, is necessarily an obstruction of travel on the street, and the owner of the property is for the time being deprived of the use of the

street.  A street cannot be resurfaced while the public is traveling over it.  The city is bound by law to keep its streets in a reasonably safe condition for public travel, and it is only exercising its right when it closes streets for repairs.  If the contractor is negligent, he may be liable to the property owner; but the city is not liable for the negligence of its agents in such matters. All the evidence offered on the trial on this subject should have been excluded.  It is earnestly insisted that, as the jury found nothing for the plaintiff on this score, and fixed $1,500 for the damages to the property, there was no prejudicial error here.  But on another trial the jury may look at the matter differently.  28 Cyc. 1078.

The only thing in the record to show that the city had theretofore fixed the grade of Todd street is an ordinance of June 25, 1901, in these words:

"An ordinance requiring that the owners of certain lots or parts of lots located on the north and south sides of Todd street, between Steele and Murray streets, in the city of Frankfort, Kentucky, be and they and each of them are hereby ordered and directed to cause good and sufficient sidewalk to be laid in front of their respective lots or parts of lots. Said sidewalk to be six feet wide from the line of the respective lots to the inside line of the curbings, and to be at the grade or elevation heretofore fixed by the city engineer and adopted by the common council."

This ordinance simply provided that the sidewalk should be built at the grade or elevation heretofore fixed by the city engineer and adopted by the common council. This only fixes the grade of the sidewalk.  Such an ordinance does not fix the grade of the street.  In City of Earlington v. Newton, 215 Ky. 448, 285 S. W. 196, on very similar facts, the court said:

"Nor do we think that the fact that some of appellee's neighbors built their sidewalks on a grade fixed by the 'city engineer,' as they say, adds any strength to appellee's case, even if we concede that the mining company's engineer was the city engineer, for the grade of a sidewalk does not necessarily have to coincide with the grade of the roadway of the street.  In most cases, the grades are on different levels, and many times there is a big difference be-

tween the two levels. Therefore, even if we concede that the city had fixed the grade for sidewalks, it does not follow that it therefore fixed the grade for the roadway of the street.''

In Town of Erlanger v. Cody, 158 Ky. 625, 166 S. W. 202, the ordinance designated the crown of the roadbed as the grade of the street. That is not the ordinance here.

The plaintiff in his petition alleged that the town had fixed the grade of the street before 1925, and then lowered the grade by the ordinance in question. The answer of the defendant on this point is in these words:

> "Defendant denies that, many years prior to his purchase of said property, the defendant and its predecessors in office had established a grade of Todd street, by constructing and improving same and keeping it in good repair continuously.''

This is not a sufficient denial. Although the defendant had not done all this for many years, it might have done part of it, and might have othewise established the grade. In addition to this the answer, further over, expressly states that the ordinance provided for the regrading of Todd street. The answer not being sufficient, the court properly refused to give a peremptory instruction for the city, for it did not appear that the city had not before this fixed the grade of the street.

> "In an action for damages resulting from a change the fact that the grading in question was the original establishment of the grade is a matter of defense which must be set up if relied on.'' 13 R. C. L. 104, section 92; City of Henderson v. McClain, 102 Ky. 408, 409, 43 S. W. 700, 19 Ky. Law Rep. 1450, 39 L. R. A. 349.

> "Appellee and his vendors had maintained their improvements on the lot in question, made with reference to the natural grade of the street, for more than 15 years. It is argued from this fact that the city had thereby, by a kind of acquiescence, established the natural grade as the permanent grade of the street. But we think there is a wide and essential difference between a municipality's acquiring a right of way for a street by prescription, and being estopped by a lapse of time from improving the right

of way or street. Laches of public officers are not generally accounted against the public. Particularly ought it not in this matter; for concededly it was within the discretion of the municipal council, when the public welfare demanded, and its resources would admit of, such an improvement. If it could be held that a failure of the council for 15 years to order a certain kind of improvement worked an estoppel on the public in the matter, so that it could not thereafter be exercised, it would result that it was not the judgment of the municipal council that would determine when such improvement should be made. The public does not lose the right to have its proper officials exercise such a discretion, although previous boards declined, or deemed it inexpedient, to make the improvement.'' City of Owensboro v. Hope, 128 Ky. 531, 108 S. W. 873, 33 Ky. Law Rep. 375, 15 L. R. A. (N. S.) 996.

On the return of the case to the circuit court the defendant will be allowed to amend its answer, if it desires to do so, and if an issue is made on this subject, and on another trial no other proof is offered than was offered on this trial, the peremptory instruction should be given.

The circuit court properly refused to allow the mayor and the members of the city council to state what they intended to do in regard to the sidewalk in front of the plaintiff's property, and properly sustained the demurrer of the plaintiff to that paragraph of the answer pleading these facts. The city council can only speak by its record. The intention of the mayor or the members of the council is immaterial, unless the council has taken official action; for nothing short of this binds the city. If the council has taken or shall take official action providing for the reconstruction of the sidewalk in front of plaintiff's property at the new grade, at the cost of the city, and is at its cost to do the work, as it has done in the case of some other property owners along the street, a different question would be presented. It is the duty of the property owner, in cases like this, to minimize the damages to his property, if it can be done with a reasonable expenditure. City of Dayton v. Rewald, 168 Ky. 398, 182 S. W. 931.

Judgment reversed, and cause remanded for a new trial, with further proceedings consistent herewith.