## Fremd v. Gividen.

(Decided February 11, 1930.)

TODD & BEARD and J. WIRT TURNER for appellant.

MOODY & BERRY and R. F. PEAK for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In this action by Bob Gividen against Osborne Fremd to recover for personal injuries alleged to have been received in an automobile accident, the jury returned a verdict in favor of Gividen for $1,500. Fremd appeals.

The accident took place about 5 o'clock on the afternoon of October 8, 1927, in front of the fair grounds,

which lie west of Eminence. Up to and beyond the entrance to the fair grounds, the Louisville & Nashville Railroad tracks and the county turnpike run parallel from the depot in Eminence. The macadamized portion of the turnpike is 18 feet wide, but is wider as it approaches the entrance to the fair grounds. The roads from the east and west enter the fair grounds and converge at a ticket office, which is located in the center of the traveled part of the entrance. At the time of the accident Gividen was on the north side of the road in a two-wheel cart headed west, and on the left of Fremd, who was driving east. According to Gividen and some of the witnesses, Fremd was driving on the left-hand side of the road, and without changing his course, or lessening his speed, drove into and collided with Gividen's cart. The fender of the car ran under the wheel of the cart, tossing Gividen about five feet in the air against the bank and hedge fence. The wheel of the cart then dropped back on the running board, and being elevated by the rear crown of the fender, Gividen was again thrown up against the hedge. When this occurred, he was thrown straddle of the wheel, and finally found himself in the basket of the car. Gividen claims that his legs and elbows were skinned, and that he was hurt through his groin. He afterwards completed a horse trade and drove home. He went to the fair grounds in his son's automobile to see a basketball game, but became sick while there and had to be carried home. A short time after the accident hernia developed and he went to Louisville for treatment. Thereafter he was confined to his bed off and on for about five months and suffered intensely. Prior to the injury he was a man of great physical strength, and rarely required the attention of a physician. About 18 years before the accident he was pawed by a horse on one of his legs, which became inflamed and yielded to treatment. On the other hand, the evidence of Fremd and some of the witnesses is that he was driving on the right-hand side of the road in the direction in which he was going. As he approached the entrance he was driving about 15 or 20 miles an hour. Just as he passed a vehicle on the left-hand side of the road, a Ford touring car came out of the fair grounds filled with women and children and drove just ahead of him. To avoid striking the women and children, he swerved to the left and then turned to the right. In doing so his left front fender ran under the hub of Givi-

den's cart wheel and raised it about 12 inches off the ground. The cart wheel then rolled off the fender and dropped back on the ground. Fremd stopped his car in 10 or 15 feet of the cart. He opened the door, stepped out of the car, and on seeing Gividen drive up the road he got back in his machine and drove to Eminence. The cart was not injured and Gividen was not thrown out of the cart. There was further evidence that Gividen complained of no injury except to his leg, and suffered from a rupture prior to the accident.

Counsel for appellant have devoted the greater portion of their brief to a discussion of the evidence, and an argument showing the improbability of Gividen's story both as to the circumstances of the accident and the extent of his injuries. Though there is much to be said in favor of their position, the case turns on which set of witnesses is to be believed, and it must not be overlooked that their credibility was for the jury and not for the court. It is apparent from the foregoing statement of the evidence that the case is one where the jury might well have found that the collision was the result of an accident for which appellant was not responsible, and that the hernia and other injuries of which appellee complained were not caused by the collision. But, inasmuch as there was evidence tending to show that appellant was negligent, and appellee was a strong, able-bodied man before the accident and had no hernia, and that the collision was of such violence as to cause a hernia, it cannot be said that the finding of the jury was flagrantly against the evidence, or that its verdict was excessive. Though it be true that one who is injured should use ordinary care to minimize his damages, the rule does not go to the extent of requiring him to undergo for the benefit of the wrongdoer a surgical operation as serious as that involved in the treatment and cure of hernia. H. T. Whitson Lumber Co. v. Upchurch, 198 Ky. 127, 248 S. W. 243; Louisville & N. R. Co. v. Kerrick, 178 Ky. 486, 199 S. W. 44. Hundley's evidence that he saw appellant in Eminence immediately after the accident, and that he got out of the car and staggered around, though of little probative value, was admissible for what it was worth. While it is insisted that the court erred in declining to permit Hundley to answer whether or not he was in jail in Eminence on that day, or had broken loose from jail, the record discloses that upon the court's adverse ruling there was no avowal as to what the witness would answer,

and there has been no departure from the rule that in the absence of such avowal the alleged error in sustaining objection cannot be reviewed. Westchester Fire Ins. Co. v. Crume, 223 Ky. 707, 4 S. W. (2d) 716.

Error in instructions is also relied on for reversal, and particular complaint is made of the instruction on the measure of damages; but appellant did not object to the instructions, and the error, if any, is not available on appeal. Rohrman v. Denzinger, 208 Ky. 832, 272 S. W. 16; Barnes v. Culver, 192 Ky. 10, 232 S. W. 39.

The point is also made that appellant was entitled to a new trial on the ground of surprise. While George Blackerby was on the stand, he testified that he lived with his father in the adjoining house to appellee, saw appellee's rupture, and was with his father when he went there to make a truss for appellee. In rebuttal, appellee testified that George Blackerby was never in his house, or in his father's house, during the time that his father lived in the adjoining house, and what impressed this on his mind was that George Blackerby's sister died and they did not know where he was. Other witnesses testified to the same effect. Appellant insists that he was taken by surprise because he was not prepared to meet such audacious statements. When a party places a witness on the stand, he must expect him to be impeached or contradicted, and one of the methods of overcoming the effect of his evidence is to show that he was not present during the time he claims that the alleged facts occurred. Therefore the introduction of evidence of this kind, though unexpected by the opposing party, is not a legal surprise for which a new trial will be ordered.

Lastly, it is insisted that the court erred in setting aside the swearing of the jury on the former trial. There being no verdict on the first trial, there is nothing to substitute in place of the verdict rendered on the second trial. That being true, the status of the parties at the time the motion was sustained cannot be restored, and there is no way of correcting the alleged error. In the circumstances the action of the court is not reviewable, and only those errors occurring on the subsequent trial may be considered by the court.

Judgment affirmed.