## City of Newport et al. v. Dorsel Co.

Jan. 19, 1940.

374

Odis W. Bertelsman and Galvin & Tracy for appellant Chesapeake & O. R. Co.

Carl H. Ebert for appellant City of Newport.

Matt Herold for appellant Louisville & N. R. Co.

Benton & Benton and Smith & Luedeke for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Affirming in part and reversing in part.

This action was brought by the Dorsel Company against the City of Newport, the Chesapeake & Ohio Railway Company, the Louisville & Nashville Railroad Company, the Kentucky Highway Commission and the Codell Construction Company to recover $70,000 damages alleged to have been done plaintiff's milling plant located in Newport as the result of the reconstruction of Monmouth street so as to eliminate a grade crossing over the tracks of the two railroad companies. On the day the case was called for trial plaintiff's motion to dis-

miss as to the Kentucky Highway Commission and the Codell Construction Company was sustained. The jury returned a verdict for $20,000 against all three of the remaining defendants, upon which judgment was entered and their appeal followed. A reversal is sought on the following grounds: (1) It was error to admit the contract and the ordinances in evidence and defendants were entitled to a directed verdict; (2) the evidence relative to the amount of damages plaintiff suffered was incompetent; (3) the verdict is not sustained by the evidence.

Plaintiff operates a flour mill at the intersection of Monmouth and Eleventh streets; its plant being located on property owned by plaintiff on both the east and west sides of Monmouth street, and while the plant is separated by the street, it is operated as a unit. The reconstruction of Monmouth street and the building of the underpass lowered the grade of the street some eight or ten feet and this destroyed the vehicular ingress and egress to and from plaintiff's buildings on each side of this street which was the sole damage done plaintiff's property. After the construction, vehicles could enter and leave each piece of property only from Eleventh street.

This action was instituted while the underpass was being constructed but the work was completed before the trial. The petition avers the defendant, Codell Construction Company, is constructing this underpass under a contract with its co-defendants, or some of them; and it further avers the defendants are doing the constructing and have cut off plaintiff's ingress and egress to its property. The City of Newport and the railroad companies filed a joint answer traversing the petition. The Codell Construction Company filed a separate answer in which it admitted it constructed the underpass under a contract with the Commonwealth of Kentucky, by and through the State Highway Commission in accordance with plans and specifications furnished it by the Commission. We find no pleading by the Kentucky Highway Commission.

It is contended by the defendants that inasmuch as they traversed the allegations of the petition that they, or the Codell Construction Company acting for them, reconstructed Monmouth street and thereby destroyed the ingress and egress to plaintiff's plant, and as the

plaintiff introduced no evidence showing any of these defendants had any connection with the construction of the underpass individually, or through the Codell Construction Company, the court should have peremptorily instructed the jury to find for defendants.

The only evidence introduced by plaintiff as to who had this work done was some city ordinances, later referred to, and a contract entered into by the city and the two railroad companies. The contract in substance was that the State Highway Commission proposed to reconstruct, at its expense, Monmouth street between Eleventh street and the southern boundary of Newport, so that Monmouth street would pass beneath two tracks of the C. & O. Railway Company and one track of the L. & N. Railroad Company, thus eliminating the grade crossing, on condition the city and the railroad companies would assume the cost of the property acquired and the property damage incident to the construction. Under the contract it was agreed the city would pay 35% of the property acquisitions and property damage, and of the remaining 65%, the C. & O. Railway Company was to pay two-thirds, and the L. & N. Railroad Company was to pay one-third. The city passed an ordinance, submitting a bond issue of $100,000 to the voters, the proceeds of which were to be used in defraying the city's obligation under the contract. This bond issue carried, whereupon the city passed an ordinance providing for the issuing of the bonds; also, an ordinance authorizing the above mentioned contract.

The defendants strenuously objected to the introduction of the written contract between the city and the railroad companies, contending as it was not pleaded the plaintiff could not recover on the contract. Plaintiff met this objection by insisting this in effect is a condemnation suit, no recovery is sought under the contract and the only purpose it had in introducing the contract and the ordinances was to show defendants' connection with the construction, inasmuch as their pleadings denied they had any connection with same.

Were the plaintiff seeking to recover by virtue of this contract instead of under Section 242 of the Constitution, defendants would be correct in their contention that the contract would not be admissible in evidence because it was not pleaded. It cannot be doubted that pleading and proof are complementary to each other

and neither is availing without the other, Cassin v. Ewald, 271 Ky. 595, 112 S. W. (2d) 1000; Cornett v. Kelly, 271 Ky. 311, 111 S. W. (2d) 679. However, plaintiff does not base his action on the contract introduced, but bases it solely upon Section 242 of the Constitution, which provides compensation must be made for private property taken for public use. While there was no taking of plaintiff's property in the sense that it was reduced to possession, yet we have many times written that the deprivation of, or interference with, the ingress or egress to and from property located on a street or public road is such a taking under Section 242 as to be compensable. Layman v. Beeler, 113 Ky. 221, 67 S. W. 995, 24 Ky. Law Rep. 174; City of Henderson v. McClain, 102 Ky. 402, 43 S. W. 700, 39 L. R. A. 349, 19 Ky. Law Rep. 1450; City of Ashland v. Queen, 254 Ky. 329, 71 S. W. (2d) 650. We are in agreement with plaintiff that the contract and the city ordinances were admissible for the purpose of showing the connection of defendants with the construction of the underpass.

Under its charter the city has exclusive control over its streets, Kentucky Statutes, Section 3094, and by suffering or permitting another to change the grade of a street, or to do any other work on its streets which results in damages to abutting property, the city is liable on the theory that the contractor does the work as the agent of the city; Chesapeake & Ohio Railway Company v. Wadsworth Electric Manufacturing Company, 234 Ky. 645, 29 S. W. (2d) 650, 652. The contract and the ordinances introduced tend to prove the city had this underpass constructed which resulted in the lowering of Monmouth street. But as the railroad companies had no control over the city streets and had no connection with this construction, they can only be held liable by means of the contract. Here the contract between the city and the defendant railroad companies was entered into in conformity with Sections 3104a-1 to 3104a-10, Kentucky Statutes, which sections provide for the elimination of grade crossings at the joint expense of the city and the railroad whose tracks are crossed. The mere fact that the defendant railroad companies entered into a contract with the city wherein they agreed to pay 65% of the cost of property acquisitions and property damage incident to the construction of the underpass, did not so connect the railroad companies with the construction as to make them liable under Section 242 of the

Constitution to those whose property was damaged. To recover of the railroad companies the plaintiff would have had to sue on the contract or upon the statutory liability of the railroad companies; and this the plaintiff failed to do. This is not in conflict with the Wadsworth case, supra, as there the plaintiff sued the city and the railroad companies on the contract expressed in the form of an ordinance, and the court said:

"The principle prevailing in this state is that one for whose benefit a contract is made may maintain an action thereon, although a stranger to the consideration; and a contract is made for the benefit of a party who has a direct financial, legal, or equitable interest in its performance." (Here follows many authorities.)

The instant case is not based on the contract, but recovery is sought under Section 242 of the Constitution. It follows, a motion for a peremptory instruction made by the two defendant railroad companies should have been sustained, as they had no connection with the construction of the underpass, or with the lowering of the grade on Monmouth street, and the only connection they had with the underpass was the contract they entered into with the city and the plaintiff did not plead that contract.

Defendants are correct that Commonwealth v. Hoover's Adm'r, 274 Ky. 472, 118 S. W. (2d) 741, holds it was not error to refuse to allow the Attorney General to argue that the taxpayers would have to pay the jury's verdict, as it was immaterial as to how the judgment would be satisfied. The evidence that the city had voted bonds was not admissible for the purpose of showing how the verdict of the jury was to be satisfied, but as pointed out above, it was admitted to show the city's connection with the construction. Admitting arguendo it was erroneous to allow the plaintiff to prove by the city clerk that the proceeds of the bond issue were deposited in bank, it could not possibly have been prejudicial to defendants because it is common knowledge that banks are the usual depositories for bond issues.

This action was treated as a condemnation proceeding by plaintiff and defendants, who concede that the measure of damages is the difference between the fair market value of the real estate before it became generally known that the underpass would be constructed, and

the fair market value thereof immediately after it was completed. But defendants complain about the manner in which this difference in value was arrived at. Two of plaintiff's witnesses were expert appraisers, who after first testifying as to the fair market value of the property before and after the construction, were permitted by the court to detail in what manner they arrived at these values. In effect, each witness testified he appraised separately the real estate, buildings, advertising space on the warehouse, and machinery before the construction; then he arrived at the value of the property after the construction by making a reasonable percentage deduction for depreciation in the market value of the property resulting from the loss of ingress and egress by reason of the construction. We can see no objection to this character of testimony and it is not condemned in such cases cited by defendants as City of Lexington v. Chenault, 151 Ky. 774, 152 S. W. 939, 44 L. R. A., N. S., 301, and Board of Councilmen of City of Frankfort v. Brammell, 220 Ky. 132, 294 S. W. 1076. In the Chenault case it was held that a witness could not be asked how much was plaintiff damaged by the taking, but that the proper question was: What was the value of the land before the taking and what was its value after the taking. Here these witnesses after fixing the value of the property after the taking testified they arrived at the figure by a percentage deduction. In 22 C. J. 575, Section 680, it is said:

"A witness as to value, should, so far as this is practicable, detail the facts upon which his estimate, inference, conclusion, or judgment is based. * * * The estimate should be rejected where the basis for a test as to its reliability is not furnished by a statement of facts on which it is based, or where the basis of fact does not appear to be sufficient."

In condemnation proceedings the owner of property is permitted to prove all facts before the property was taken which would appeal to a buyer and all facts after the taking which would not appeal to a buyer. An industrial plant, like this mill, should be valued as a going concern, and the witnesses should be allowed to inform the jury in detail how they arrived at the values they put on it, Louisville & Nashville Railroad Company v. White Villa Club, 155 Ky. 452, 159 S. W. 983; Kentucky Hydro-Electric Company v. Reister, 216 Ky. 303, 287 S. W. 357; Producers' Wood Preserving Company v.

Commissioners of Sewerage of Louisville, 227 Ky. 159, 12 S. W. (2d) 292. We conclude the court did not err in permitting the witnesses to testify in detail just how they arrived at the estimation of values placed upon plaintiff's property.

Defendant's complaint is without merit that the court erred in permitting witnesses for plaintiff to testify as to the value of the mill machinery before and after the underpass was constructed. The evidence shows the machinery and equipment chiefly consisted of bins and conveyor ducts built into the buildings and connected with the machinery for the milling, grinding, blending and packing of flour and various grains. This machinery was a fixture under the rule enunciated in Bank of Shelbyville v. Hartford, 268 Ky. 135, 104 S. W. (2d) 217, and First State Bank of Eubank v. Crab Orchard Banking Company, 255 Ky. 800, 75 S. W. (2d) 517, 518. In the latter case it is written:

"The tests for determining whether an article is a fixture are: (1) Annexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold."

In condemnation proceedings where the real estate, buildings and machinery of an industrial plant are operated as a unit, as was this mill, it is permissible to value the machinery as part of the plant where the evidence shows the machinery is a fixture, White v. Cincinnati R. & M. Railroad Company, 34 Ind. App. 287, 71 N. E. 276; Memphis Street Railway Company v. Bernstein, 157 Tenn. 637, 194 S. W. 902; City of Los Angeles v. Klinker, 219 Cal. 198, 25 P. (2d) 826, 90 A. L. R. 148. While the plant must be valued as a unit, as was done by plaintiff's witnesses in this instance, but after arriving at its value as such a unit, the witnesses may testify as to the various values they put on the real estate, buildings and machinery, as we pointed out in the preceding paragraph, to show how they arrived at the value of the plant.

We cannot agree with defendants that the evidence does not sustain the verdict. Defendants argue plaintiff is attempting to recover for the loss of parking space for its customers on Monmouth street and because its

buildings were severed by the construction, when as a matter of fact they were severed by this street before the underpass was built. The fallacy in such argument is that plaintiff is not seeking to recover any such special damages to its business, but its sole ground for recovery is the loss of ingress and egress to and from its buildings on Monmouth street as is shown by the evidence and instructions, which instructions were offered by the defendants. The Court properly sustained defendant's motion to strike from the petition the item of $20,000 damage plaintiff alleged its business suffered and no evidence was offered on this point.

The judgment is affirmed as to the City of Newport and is reversed as to the C. & O. Railway Company and as to the L. & N. Railroad Company.