**EAST KENTUCKY RURAL ELECTRIC COOPERATIVE CORP., Inc.,** Appellant,

v.

**D. H. SMITH et al., Appellees.**

Court of Appeals of Kentucky.

Feb. 21, 1958.

Cecil C. Wilson, Glasgow, Chas. R. Richardson, Munfordville, for appellant.

Stokes A. Baird, Davis Williams, Munfordville, for appellees.

STANLEY, Commissioner.

The appeal is from a judgment for $4,000 rendered in a proceeding to condemn a right of way for an electric transmission line of 69,000 volts on and over the property of the appellees, D. H. Smith and his wife, Annie Smith.

In the beginning of the trial the court ruled: "that incidental damage to the remainder of the property cannot be offset by advantages to the remainder of the property by reason of the construction of the proposed line or the taking of said easement." The appellant objected to the ruling and now contends that it is a reversible error.

There is no clear line of demarcation as to when benefits to portions of land remaining after an easement is taken may be set off against resulting damages thereto. But within certain limits it is generally held in this jurisdiction that special consequential benefits to remaining land by reason of the improvement of the land taken may be offset against incidental damages shown to have resulted to the land not taken if the benefits are capable of being estimated in money value, as by the enhancement in the market value of the remaining land. Music v. Big Sandy & K. R. R. Co., 163 Ky. 628, 174 S.W. 44; Board of Councilmen of City of Frankfort v. Brammell, 220 Ky. 132, 294 S.W. 1076; Louisville & N. R. Co. v. Hargis, 230 Ky. 806, 20 S.W.2d 991. However, the appellant is not in a position to have this court review the ruling excluding all evidence with respect to any consequential benefits. There was no offer to introduce such evidence or any avowal or other showing as to what the appellant could or would prove if permitted. CR 43.10. It is a consistent rule of appellate practice that the court will not. review a question of error in rejecting evidence in the absence of such a disclosure. Fremd v. Gividen, 233 Ky. 38, 24 S.W.2d 915.

We turn our attention to the question of an excessive verdict.

The appellees' property, consisting of 193 acres, is on the south side of Kentucky Highway No. 218 and abuts the eastern boundary of the city of Horse Cave. The power line right of way is a 100 foot strip through the middle of the farm for a distance of 3,945 feet, the area taken being computed as a little over nine acres. The land appears not to be very productive as a farm and seems to have been in a low state of cultivation. But it is reasonably adaptable as a subdivision of town lots. The city has built up to the line, and its water and gas mains and electric service lines extend to the edge of the property. Similar property across the highway had been divided into 25-foot lots and sold two years before this easement was condemned for the equivalent of $3,828 an acre. There is also a small subdivision adjacent to the appellees' property on the east, which is on the far side from the city, and another larger such development a quarter of a

mile farther out the road upon which a number of residences have been erected.

The evidence, in general, was directed to proving that the appellees' farm for a distance of about 1,300 feet back from the highway is adaptable and desirable as a subdivision of Horse Cave. This area was estimated to contain about 30 acres and the 100 foot easement through it at about three acres. Several witnesses valued this part of the land at $1,500 to $2,000 an acre before the power line had been built across it. This seems to have been computed at about $300 a building lot. Some of the 25-foot lots across the road had been sold for $325, and others farther out the highway from $150 to $200 each. A parcel of six-tenths of an acre adjacent to the appellees' farm, referred to above as a small subdivision, had been sold two or three years before for $1,000. Witnesses expressed the opinion that the front 30-acre portion of the farm had been rendered worthless because the easement had practically destroyed its salable value since no building could be erected on the 100-foot strip and the existence of the easement and presence of the electric power line would make other lots much less desirable and therefore worth less on the market. The evidence is that instead of $1,500 to $2,000 an acre, this area would be worth $200 to $400 an acre.

It was further testified that the back part of the farm would be damaged or diminished in value $50 to $60 an acre. There was evidence to the effect that the difference in value of the entire farm of 193 acres before and after taking of the easement was between $5,000 and $6,000, although the detailed estimates and computations aggregate a much greater sum, perhaps as much as $11,000 to $12,000.

Over against this evidence introduced by the property owners is that presented by the appellant, which greatly minimized the valuations and damages. E. V. Withers, a farmer and vice president of the local rural electric cooperative association, thought the difference in value of the entire farm was between $800 and $1,000. A neighbor fixed it as $1,000. One of the commissioners appointed by the county court to appraise the compensation or damages estimated it to be $239.45, and another at $500; but these gentlemen admitted they had given no consideration to the adaptability of the property for subdivision into town lots. The owners had listed their farm for taxation for several years at $8,690, of which $1,690 represented improvements.

In determining what compensation should be paid for an easement taken under the power of eminent domain, the measure is its market value to the owner of the land taken and the loss caused to him by the taking and depriving him of its use. He is entitled to just and full compensation for both. § 242, Kentucky Constitution; Producers' Wood Preserving Co. v. Commissioners of Sewerage, 227 Ky. 159, 12 S.W.2d 292. Therefore, it is competent for either party in the proceeding to offer evidence descriptive of the property, its physical characteristics, its location and surroundings, etc. The owner is not limited to the value of the land for the purposes for which it is being actually used at the time. He is entitled to have considered every legitimate use to which the land may be devoted and everything that affects the value. Adaptability for particular uses to which the land may be reasonably put is a proper element for consideration, so that if the land is reasonably adaptable and there is expectation or probability in the near future that it can be or will be divided into town lots, that should be regarded and the increased market value thereof considered. Kentucky Hydro Electric Co. v. Reister, 216 Ky. 303, 287 S.W. 357; Kentucky Nat. Park Commission ex rel. Commonwealth v. Russell, 301 Ky. 187, 191 S.W.2d 214; Salt River Rural Elec. Cooperative Corp. v. Litsey, Ky., 275 S.W.2d 782.

Particularizing, it may be said to be generally recognized that where there

is an appropriation of land for a high tension power line or other wire lines over private property, the owner of the property has the right to be compensated not only for the land actually taken for poles and towers (which in this case the appellant says is only 22 square feet occupied by the 12 poles and worth less than five cents altogether) and the depreciation in the value of the strip of land over which the wires are suspended and which is subjected to use as a right of way for maintenance of the line, but he is entitled also to compensation for the impairment of the remainder of the tract by reason thereof less any special consequential benefit. In short, the appellees here were entitled to recover such sum as would equal the difference in the market value of their entire property immediately before the taking and after the easement is taken, that market value being in a large degree its value as a potential subdivision to the growing city which it adjoins. Kentucky Hydro Electric Co. v. Reister, 216 Ky. 303, 287 S.W. 357; Commonwealth v. Crutcher, Ky., 240 S.W.2d 605; Kentucky Utilities Co. v. Barnett, Ky., 252 S.W.2d 12; Commonwealth v. Gilbert, Ky., 253 S.W.2d 264.

 Now, when all these things are considered, can it be said that the verdict substantially exceeds any rational appraisal of the appellees' evidence? The jury heard that evidence and rendered its verdict under instructions which are accepted as correct. The verdict may be generous. But it is to be borne in mind that this court will not set aside a verdict of damages or compensation unless on first impression, or at first blush, as it is often expressed, the award shocks the judicial conscience as excessive, or, in a case of this kind, when the size of the verdict is so clearly excessive as to reflect a purpose of the jury to unjustly favor their neighbor at the unfair expense of the public service corporation, or the state, as the case may be, and it is apparent that the jury disregarded the evidence or rules of law

given them by the court. Governed by these rules, we hold the verdict not excessive.

Another point made by the appellant is that the trial court erred in refusing to exclude evidence which had no probative value. No such evidence is pointed out, and we have observed none.

And we find no merit in the claim that the sheriff was guilty of misconduct by having made certain statements in the hearing of the jury while he had them in charge viewing the property.

The judgment is affirmed.