## Cassin et al. v. Ewald.

(Decided Jan. 21, 1938.)

596

H. J. GRAHAM for appellants.

J. W. STERNBERG for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is an appeal from a judgment rendered by the Hon. Joseph J. Hancock, judge of the first division common pleas branch, of the Jefferson circuit court, in favor of the appellee, John P. Ewald, Jr., and against the appellant partners, doing business as the Municipal Engineering Company, for the sum of $620.44, with 6 per cent. interest thereon from August 1, 1935, until paid.

The appellee, John P. Ewald, Jr. (hereinafter referred to as the appellee), brought this action against the partners, H. B. Cassin, H. H. Graham, J. C. Wheeler, and William Wilson, doing business as the Municipal Engineering Company of Louisville, Ky. (hereinafter referred to as the appellants), seeking the recovery of wages alleged due and owing him for some ten months' services rendered appellants under an express contract of employment entered into between them, providing for their payment to appellee of a fixed salary at the rate of $60 per month.

The appellants, upon the appellee's having made demand upon them for payment of wages, claimed owing him for services he had rendered them under and pursuant to the terms of this contract, refused payment. Thereupon, Ewald brought this action against them.

His petition sets out, first, that the named defendants were partners, doing business as the Municipal Engineering Company in Louisville, Ky. By its second paragraph it was alleged that the defendants had employed him on or about November 29, 1933, as a helper or assistant to Mr. H. B. Cassin, a partner in the company serving as its engineer, and had agreed to pay him for his services the sum of $60 per month, and further set out an itemized statement of the length of time he had worked and the amount due him therefor, when so computed, amounting in all to the sum of $620.44, no part of which, he alleged, had been paid him.

The petition, next alleging that the action was based on a contract for services rendered, and setting out grounds for obtaining a general order of attachment (with which we are not here concerned), concluded with a prayer for judgment in the sum of $620.44 with interest against the defendants.

The defendants answered, pleading, as their only

defense to the alleged cause of action declared in the petition, a traverse of its allegations, and prayed that the petition be dismissed, and that they be adjudged their costs.

The issues thus joined by the petition and answer thereto were the only issues made between the parties by the pleadings, and upon which issues alone evidence was heard upon the first trial held at the February, 1936, term of the court, when, the case being submitted upon these issues, the evidence introduced by the par-- ties in support thereof, and the instructions given the jury thereon by the court, it returned a verdict for the appellants, upon which judgment was accordingly entered.

Plaintiff thereupon by counsel filed motion and grounds, asking that the verdict and judgment be set aside and that he be granted a new trial, for the **reason** (among other alleged errors assigned) that the verdict was contrary to the law and evidence and was flagrantly against the evidence, which motion was sustained by the court and a new trial granted plaintiff upon such ground.

Upon the action being again assigned and coming on for trial at the April, 1936, term of court, upon the same pleadings and issues as presented upon the first trial, the parties again proceeded to introduce their supporting proof, pro and con, of the issues joined by the pleadings, respectively asserting and denying the making of plaintiff's alleged express employment contract sued on.

The evidence upon these issues, as disclosed by the record, is that the Municipal Engineering Company is, as alleged in the petition and admitted, a partnership, composed in its membership of H. B. Cassin, H. J. Graham, J. C. Wheeler, and William Wilson, which was created for the purpose of preparing applications for municipalities, having no engineering department, for loans and grants of money from the United States Government, under the supervision and administration of the Public Works Administrator, for the construction of water and sewerage systems, streets and other public improvements.

Under the provisions of the act creating the Fed-

eral Public Works Administration, it was necessary for cities and towns making applications for loans and grants, desired for the construction of such projects, to employ their own engineers to draw, prepare, and submit plans for the proposed project to the proper. agency of the Government for its approval and acceptance, and it was this class of business that the appellants were engaged in procuring and promoting when, it is alleged, they employed the appellee to assist and serve Mr. Cassin, one of the partners, in performing the engineering branch of such project work obtained by the company.

The evidence introduced by plaintiff to maintain his affirmative side of the issues joined by the pleadings, as above set out, consisted of his own testimony and that given by his father, the senior Ewald, which tended to corroborate and support the claim of his son (asserted in his petition) that he had been both employed by the company, through Mr. Cassin, and promised a fixed monthly pay for his services so rendered to it.

The plaintiff's testimony was briefly that soon after an interview had between Mr. Cassin and his father about August, 1933, concerning the company's employment of his son, the appellee, he had been called by Mr. Cassin to his office and had there gone to work for the company in helping Mr. Cassin, its engineer, with the drafting and other general office work assigned him by Mr. Cassin, consisting of clerical work, typing, writing out specifications, and taking care of his branch of the office correspondence; that when he had been so engaged in the service of the company for some thirty days, without any of the company's town improvement projects being accepted or anything being paid the company thereon (as Mr. Cassin had led him to expect would soon eventuate), and it appearing indefinite as to when any project would be accepted and consummated, he felt that he, such being the outlook, should take up with Mr. Cassin the matter of his desire to have some definite understanding as to the salary that was to be paid him by the company during this indefinite period of his rendering these preliminary services to the company, while looking to his later being given its promised inspector's job upon some of the company's

projects when plans were consummated and construction work begun.

Plaintiff testifies that upon a conference had, an agreement was at such time reached between them (the appellant and 'partner, Mr. Cassin) that the company would allow him for his services, of the character he was rendering to Mr. Cassin, a fixed salary of $60 per month, but that the same was to be payable only when the company should receive some payment upon one of the improvement projects being handled by it, as the company had no funds available for sooner paying him; that with such understanding, he continued his work in Mr. Cassin's office, until it amounted in time to something over eighteen months, without his ever having been paid anything whatever by the company therefor; that later, upon his being advised that the company had received payment upon some of its then accepted PWA projects it was handling, he at once prepared an itemized statement of the full time he had served the company and the amount of back salary due him therefor, which, computed at the salary rate of $60 a month, showed a total owing him therefor of $620.44; that he submitted this itemized statement to Mr. Cassin for his O. K. of it, who signed same as approved by him as correct, for plaintiff's presentation to the appellant partners for payment; that when this statement was presented to appellants with a demand for payment, his demand was not only refused, but general surprise and disagreement was caused and arose between the partners as to its payment, when, after some considerable discussion of the matter, they agreed to pay him the sum of $160 in compromise satisfaction of his claim for all past services rendered, which he refused to accept and thereupon instituted this suit.

On the other hand, the evidence for the appellants is to the effect that plaintiff had been taken into Mr. Cassin's office, not under a contract to pay him for services rendered the company while in Mr. Casssin's office, but with the understanding that he was taken in, not only to help him, but mainly for the purpose of learning the engineering business; that he was to receive no compensation therefor except that, upon one of the company's improvement projects being accepted and its construction work begun, he would be given the

job of inspector or supervisor of it, with the NRA rate of pay. Further, they testified that plaintiff had presented different claims, in which he asked different amounts, and finally presented a written statement for the services rendered by him to the company; that they had each told him they could not individually promise to pay him the amount claimed, or any amount, but that they would all meet and consider what allowance, if any, they would make him therefor; that any allowance made him (as stated by one of the witnesses) would be in effect a gift and not a debt payment, as no amount whatever was due him under any contract had with the company, for the reason that no contract had ever been made by them with him to pay him anything for his preliminary services, rendered the company while helping in the office of Mr. Cassin.

Further, appellants sought to introduce in evidence their private contract of partnership, defining and limiting, as between themselves, the right and authority of the partners to create debts against the company, to the introduction of which an objection was made and sustained by the court as incompetent under the issues made, unless plaintiff was shown to have knowledge of the terms of the contract.

Also, appellants called certain engineers as expert witnesses, whom they interrogated as to what length of time would be required by an average draftsman to do the work plaintiff had testified was done by him in copying maps, etc., made upon these government projects, to which the court also sustained an objection, upon the grounds that no issue was made by the pleadings as to the reasonable value of the work, or as to what was the reasonable time in which the work done by plaintiff could have been performed by a more capable draftsman, and that therefore such proof was incompetent under the issues joined by the pleadings, as the only question presented was whether or not the appellants had made the claimed contract with plaintiff to pay him a fixed monthly wage of $60 for his services rendered them while in their employ.

The testimony of appellant Cassin, though given for defendants, was to a certain extent favorable in its effect to appellee. He testified that he had brought the

plaintiff into his office at the request of plaintiff's fa-
ther, an old friend of his, with the understanding that
he was employed, but at no fixed wage, and that nothing
would be paid him for his services so rendered until the
company received payment upon some of its then ac-
cepted projects. He further stated that he thought the
plaintiff should be paid something for his services, but
that no fixed amount therefor had ever been agreed
upon between him and the plaintiff, or his father, and
that he had only signed the written statement of ac-
count, as submitted by the plaintiff and showing that
the company was indebted to him for his services ren-
dered in the amount of $620.44, for "trading purposes,"
or to help him procure a good compromise settlement
with appellants for his services.

Upon the conclusion of the testimony, plaintiff
moved for a peremptory instruction directing the jury
to find for him, which motion was overruled by the
court, when it again gave the same instructions to the
jury as were given it upon the first trial. The jury,
upon this evidence, the instructions of the court and
argument of counsel, returned a verdict finding for ap-
pellee the amount sued for of $620.44, with 6 per cent.
interest thereon from August 1, 1935, until paid, upon
which judgment was accordingly entered.

Thereupon, appellants by counsel filed motion and
grounds for a new trial, which were overruled. Hence
this appeal.

In view of the above rather extended and detailed
narration of the pleadings making up the issues and the
evidence presented in the two trials of this case, we
deem it unnecessary to enter upon any further detailed
discussion of the points urged and strenuously insisted
upon for reversal of the judgment.

However, briefly adverting to these points urged
by appellants for a reversal of the judgment, we will
first consider their contention that the verdict and
judgment were flagrantly against the evidence and that
same was not sufficient to support the jury's verdict.

As to this, we deem it sufficient to say that there
was positive and probative evidence given by the plain-
tiff, quite ample to satisfy the requirement of the scin-
tilla rule, in that he directly asserted and testified to

an agreement made with Mr. Cassin, whereby he was to be paid a fixed salary of $60 for the services rendered the company by him.

The making of such a contract as contended for is not supported by as full and convincing evidence as might well be desired, yet there is positive evidence to such effect, which is to a considerable extent supported, not only by plaintiff's testimony to such effect, but by that of his father and also of some of appellants' witnesses.

The making of such a contract was denied vehemently by the appellant Mr. Graham, and all the appellants deny that any contract of employment was had with the plaintiff, whereby he was to be paid a definite, fixed monthly salary for services rendered the company.

In such a situation, the question as to whether or not such a contract as claimed by the plaintiff had been made with appellants was a question of fact, and its determination was exclusively within the province of the jury. The jury has found, upon this evidence submitted by the witnesses, that the contract as claimed by the appellee was in fact had between the parties and that plaintiff had rendered his services to the company thereunder as itemized and set out in his written statement presented the appellants for payment.

Also, we are of the opinion that the next objection of appellants is without merit, as hereinabove indicated, in contending that the court prejudicially erred in rejecting the testimony of their expert witnesses as to what, in their opinion, was a reasonable time in which the work done by appellee could have been performed by an average draftsman or as to what was to be considered the reasonable value of the services rendered the company.

In considering this contention, it is to be noted that the appellants did not plead the making of a contract to pay plaintiff for the reasonable value of his services or that he was to render them the services of a skilled draftsman, but it was only pleaded and denied that the appellee had contracted to render his unskilled services to the company by helping Mr. Cassin in his engineering work and other office work. As pertinent to this point, it may be observed that the rule is well settled,

that pleading without proof, or proof without pleading, is in either case without effect and of no avail, from which it follows, when same is here applied, that the appellants proffered proof upon a question not made an issue by the pleadings was incompetent, inasmuch as such proof could not be properly admitted where not pleaded nor pertinent to any issue made by the pleadings.

Subject again to the same criticism is the contention of appellants that the court erred in not permitting them to introduce in evidence before the jury their private partnership agreement having, as one of its terms, the provision that no partner could create an indebtedness against the company in an amount exceeding $10, where not consented to by three of the partners.

Inasmuch as such a limiting provision upon the right of the partners to create indebtedness, set forth in their private contract, would be of no binding effect upon the right of a third party to trade with one of the appellants in violation of such restrictive provision of the contract, where same was unknown by him or not communicated to him, the restrictive provision of the contract would not be competent evidence in behalf of the company in attempting to defeat a contract made by it with a third party, creating an indebtedness in excess of the limited amount.

The appellants not here having shown that the appellee was advised or told of this restrictive provision of the partnership agreement, though some of them state that he was about Mr. Cassin's office where it was discussed by the partners, the court, we conclude, rightly refused to permit the admission in evidence of the appellants' private partnership contract.

The appellants further criticize the court's instructions here given, which are as follows:

"1. If you believe from the evidence that defendants employed plaintiff to render certain services to the defendants, as referred to in the evidence; and if you further believe that the defendants, under such agreement, promised to pay the plaintiff at the rate of $60.00 per month; and if you further believe from the evidence that the plaintiff, under such contract, performed services for the de-

fendants from November 29, 1933, to May 25, 1934, inclusive * * * then you will find for the plaintiff; but unless you so believe, you will find for the defendants.

"2. If you believe from the evidence that the contract relative to plaintiff's employment between plaintiff and defendants was conditioned in that plaintiff was not to receive any salary or compensation for his services, and was only to be paid when the work referred to in the evidence was begun; and if you further believe from the evidence that no work was ever performed by plaintiff under such contract, if you believe such was the contract between the plaintiff and defendants, then you will find for the defendants."

We are of the opinion that appellants' criticism of them, as not giving the law of the case, is without merit.

The first of the instructions merely submits to the jury for its determination the issues made by the pleadings.

The second instruction, in authorizing the jury to find for the defendants (here appellants) should it find that there was a conditional contract entered into between the parties, etc., is not to be complained of by appellants as prejudicial to them, inasmuch as the instruction was more favorable than the appellants were entitled to, in that it permitted the jury to find for them upon an issue not made by their pleadings, in that they had pleaded no such conditional contract as having been made with the appellee, but by their answer (the only pleading filed by them) they denied the specific allegations of plaintiff's petition upon an express contract only.

Further, the appellants have here moved the court to set aside the judgment rendered upon the second trial of the case in April, 1936, and reinstate the judgment rendered upon the first trial at the February, 1936, term of the court, upon the ground that the ruling of the trial judge, in sustaining appellee's motion to set aside the first judgment and grant him a new trial, was erroneous and constituted an abuse of the sound discretion vested in the court to grant a new trial in proper instance.

Clearly this motion is not to be sustained, in the absence of a bill of exceptions showing the evidence and rulings on the first trial, as was expressly so held by us in the case of Royal Collieries Company v. Wells, 210 Ky. 600, 276 S. W. 515.

As against such contention, counsel for appellee has moved to strike the appellants' bill of exceptions in the first trial of the action, required for bringing before us all the record (inclusive of the evidence) for our review and determination as to the propriety of the criticized ruling of the court in granting a new trial upon the ground that the jury's verdict rendered, upon the evidence therein heard, in favor of defendants was contrary to it.

The appellants object in turn to appellee's motion to strike the bill of exceptions, for the most excellent reason, they answer, that the exceptions were taken and appear of record.

Upon the first trial it appears that the court, in ruling upon the appellee's motion for a new trial, entered the following order:

"Plaintiff's motion for a new trial sustained, Exc. and 60 days for Bill of Ex. The verdict of the jury was contrary to the evidence."

Appellants say that pursuant to the provisions of section 1016, Kentucky Statutes, exceptions were taken by them to the ruling of the court in sustaining the motion for a new trial; that section 1016, Kentucky Statutes, "clearly means that where an action has been tried in court and judgment rendered, the bill of exception must be filed as indicated, but it seems that it would have no such application to the case at bar, where there have been two trials, unless the first trial is a final order and appealable, but this court has expressly stated that such a judgment is not final," and in support of such contention, cite and rely on the opinion rendered in Northcutt v. Nicholson, 246 Ky. 641, 55 S. W. (2d) 659, 661.

However, our reference to that opinion leads us to conclude that the language there employed by the court is not subject to the interpretation or construction contended for by appellants, but that its holding is clearly

just the opposite, in its meaning, where it speaks as follows:

"It is argued by appellant that an order setting aside a judgment and granting a new trial is an interlocutory and not a final order, and therefore that the party excepting is not required to prepare and tender his bill of exceptions until after the subsequent trial of the case. An order granting a new trial is not a final judgment in the sense that it may be appealed from at once, but it is final in the sense that the excepting party has been divested of a right which the court making the order cannot restore after the expiration of the term. The right of appeal is merely held in abeyance pending the subsequent trial and final disposition of the case. Clark v. Pullman Company, 205 Ky. 336, 265 S. W. 820; Steinke v. North Vernon Lumber Company, 190 Ky. 231, 227 S. W. 274; Perkins v. Ogilvie, 148 Ky. 309, 146 S. W. 735; Schweitzer v. Irwin's Executrix, 101 Ky. 401, 41 S. W. 265, 19 Ky. Law Rep. 624, and other cases of similar import cited by appellant, go no further than to hold that an order granting a new trial is not final in the sense that it is immediately appealable. * * *

"The proper practice where a new trial has been granted and an appeal has been prosecuted from a judgment entered in a subsequent trial was outlined in Dailey v. Lexington & Eastern Railway Company, 180 Ky. 668, 203 S. W. 569. It was held that a court of continuous session is without power to set aside its order granting a new trial after the expiration of sixty days from the rendition of such a judgment, and *that a bill of exceptions of the proceedings upon the first trial must be prepared and tendered within sixty days after the order granting the new trial has been made.* This is clearly the intention and purpose of section 1016 of the Kentucky Statutes." (Italics ours.)

Applying this rule announced, it results that in as much as the appellants have filed no bill of exceptions within the time allowed of 60 days, bringing up the proceedings and evidence had and heard upon the first trial, the challenged propriety of the court's ruling

thereon made is not here presented nor a question before us, as we are constrained, for the reasons stated, to sustain appellee's motion to strike the bill of exceptions in the first trial of the action and must also, for the reasons above indicated, overrule the appellants' motion to set aside the judgment rendered upon this second trial of the case and reinstate the judgment rendered upon the first trial at the February, 1936, term of the court.

Therefore, for the reasons hereinabove stated, it is our conclusion that the second or April judgment of the court should be, and it is, affirmed.