## Harvey Coal Corporation v. York.

(Decided Feb. 2, 1934.)

JESSE MORGAN for appellant.
S. M. WARD for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The Harvey Coal Corporation has appealed from a judgment affirming an award made by the Workmen's Compensation Board.

## The Admitted Facts.

The appellee, Dudley York, was injured in the mines of the appellant in Perry county, Ky., on the 2d day of September 1930, by a slate fall, which injured the appellee's spine by fracturing certain of the vertebræ thereof. The effect of this injury was that the appellee, Dudley York, was paralyzed in his lower extremities. There was complete paralysis of the bowels and kidney and bladder action.

He was brought to the Hazard Hospital by Dr. S. T. Simmons, the mine physician of appellant, immediately after he received his injury, a distance of some five or six miles, and there examined by Dr. Simmons and the hospital staff, and X-rays were made of his spine, which examination and X-ray findings showed that certain vertebræ were completely fractured and his condition to be serious.

The appellee, York, was 23 years old at the time he received his injury, and was not married, and had no dependents. He had been working only five days in appellant's mine at the time he was injured. A plaster Paris cast was applied to York's body extending from the axilla to the mid portion of his legs, and he was put to rest; and the next day a consultation was held, at which time the staff of the hospital, together with Dr. S. T. Simmons, agreed that his condition was very serious. It was their opinion that he should be removed to Louisville, Ky., for an operation, and where a specialist and surgeon could be consulted as to the advisability of performing an operation which might prove life-saving. It was agreed by the appellee, York, and all members of his family that Dr. S. T. Simmons should remove him at an early date to the Kentucky Baptist Hospital in Louisville, Ky., to be placed in the care of Dr. A. M. McKeithen of that city. At a consultation on September 5, 1930, between Dr. McKeithen and Dr. S. T. Simmons, it was decided that the operation should be performed as soon as possible. On September 9, 1930, Dr. McKeithen performed the operation.

The family of the appellee, York, was the mother and brother; the brother of appellee accompanying the

appellee and Dr. Simmons to Louisville. As shown by the evidence, at the time of the hearing of this case before the referee in Hazard, appellee was present going about where he pleased on his crutches, normal action had been restored to his bladder and kidneys and to his bowels, and considerable relief to his lower limbs; and his life was prolonged by this trip to Louisville.

## Matter in Dispute.

Harvey Coal Corporation does not dispute the correctness of the award to York for total permanent disability of $15 per week for 400 weeks, or a total of $6,-000. The Harvey Coal Corporation has expended upon the surgical and medical care and hospitalization of York $1,641.29. Of this it concedes that $200 should be charged to it under the provisions of section 4883, Ky. Stats., thus leaving a balance of $1,421.29, and for that and for $150 furnished York, or a total of $1,571.29, it is claiming a credit.

The Workmen's Compensation Board appears to have allowed the $150 credit, but to have refused to even consider the $1,421.29 credit. In refusing to consider this, the board abused its discretion. The allowance of this $1,421.29 is left to the discretion of the board by section 4906, Ky. Stats., a portion of which we shall copy and italicize for our own convenience:

> "Any payments made or the value of supplies furnished by the employer or his insurer during the period of disability, to the employee or his dependents, *which by the terms of this act were not due or payable when made or furnished,* may, with the approval of the board, be deducted from the amount payable as compensation."

## Our Conclusion.

Of course, the fact that an employee is injured does not relieve his employer of the obligation to pay him whatever he then owes him for something other than the injury, so, eliminating the words italicized, and reading the statute as it would be with those words omitted, it becomes clear that the allowance of the claimed deductions is a matter left to the discretion of the board.

"The term 'discretion' denotes the absence of a hard and fast rule. The Steamship Styria v. Morgan,

186 U. S. 1, 9, 46 L. Ed. 1027, 22 S. Ct. 731. When invoked as a guide to judicial action, it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." Langnes v. Green, 282 U. S. 531, 51 S. Ct. 243, 247, 75 L. Ed. 520.

That does not mean an employer could sell to the family of an injured employee an automobile, could pay the expenses of elaborate reception or other social function given by them, could send them on a tour of Europe, could send them on a sea voyage, or aid and encourage them in any other like foolishly extravagant expenditure and then receive credit for it, but the employer is entitled to deductions for such reasonable sums as the board in its discretion may find were furnished in good faith in an emergency to the dependent family of the injured employee to enable them to live or reasonable sums expended in good faith, in an emergency, in an effort to save the life of the employee, or to give him comfort or restore him to usefulness.

Nor does this statute mean that the consent of the board to such expenditure must be obtained before it is made, as it may often be impracticable to do so, for example, in this case the record indicates it was imperative that Mr. York be operated upon at the earliest possible moment. To have delayed action until the consent and approval of the board could have been obtained would in all probability have resulted in Mr. York's death.

To hold that an employer could have no deduction for good-faith expenditures made in an emergency, in an effort to save the life of an injured employee, would result in such efforts not being made, and it was never intended that any such horrible state of affairs, that any such inhumanity, should result from the operation of the law. There is much effort in this record to show Mr. York consented to the expenditures made in his behalf and agreed to pay therefor, but we are not resting our holding on that, for, if an employee should sustain a fracture of the skull and be rendered unconscious thereby, so he could not consent, the rule would be the same, and the employer should be allowed for good-

faith emergency expenditures made in an effort to save his life, or add to his comfort or usefulness.

We have not overlooked the authorities cited, but they are based upon constructions made by courts of other jurisdictions and of statutes different from the statutes of this commonwealth, and hence do not apply to the problem before us, and therefore we have not followed them. This is not a case involving a finding of fact made by the board, for the board has never considered at all the claim of the Harvey Coal Corporation with a view to determining whether or not it should in its discretion be allowed, but the board has simply decided as a matter of law that it could not be allowed and that the board had no discretion in the matter.

Therefore the judgment is reversed, with direction to refer the case to the board for it to allow the Harvey Coal Corporation a deduction for the whole or such part, if any, of this bill as the board may in its discretion find was reasonably expended in good-faith effort to save the life of Mr. York or to add to his comfort or usefulness.

Judgment reversed.