## Kentucky Nat. Park Commission ex rel. Commonwealth v. Russell et al.

Dec. 14, 1945.

188

Martin R. Wilson, Eldon S. Dummit, Attorney General, and Forest Hume, Assistant Attorney General, for appellant.

E. B. Wilson, W. T. Davis, and Logan E. Patterson for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

By this proceeding, the Kentucky National Park. Commission, KRS 148.090, is condemning a portion of Cumberland Mountain, adjacent to the tract of which the celebrated Pinnacle is a part, that it may be brought into the Cumberland Gap National Historical Park area, as designated by the Congress of the United States and the Secretary of the Interior. The tract is composed of 619.30 acres and belongs to William Russell, David G. Colson, and others, jointly. The Commissioners appointed in the initial proceeding reported a valuation

of $4,374.76, or a fraction over $7 an acre. This was confirmed by the county court, the judge sitting without a jury. In the circuit court a jury fixed the value of the property at $22,500 ($36.36 an acre), from which, however, $2500 should be deducted as the value of certain leases in which the condemnor was not interested or which it waived. The Commission appeals and urges a reversal of the judgment upon the grounds: (1) The valuation is excessive and not sustained by the evidence; (2) error in admitting incompetent evidence; and (3) an abuse of judicial discretion in overruling its motion that the jury view the property.

I. The tract borders upon or has running through it U. S. Highway No. 25E, and is not far from the corporate limits of Middlesboro. An abandoned portion of the highway and several other roads run through it. The evidence of value is conflicting, with the maximum and minimum very far apart.

We first summarize the evidence supporting the defendants' claim, as set in their exceptions, that the property is worth over $90,000. It was acquired about 25 years ago by W. G. Colson, from whom some of the defendants inherited their shares; and C. D. Ball, from whom the others acquired title, at a valuation of $18,000 in the settlement of a suit involving the title. There is timber on 500 acres or more, worth $22,000 to $20,500, a small part having been recently sold at $37 an acre, the purchaser valuing the whole at $40. There are approximately 300 acres of coal in three seams underlying the surface, one 23 to 24 inches; another 32 to 38 inches; and the third 48 to 60 inches. A witness described the vein as running all the way through the property, and another that at one time he and another man mined coal from the tract and got out "as high as 20 tons a day." The valuation of this coal upon a royalty basis or upon actual value runs into considerable money. There are several deposits of sand. Three quarries have been operated at different times, yielding an average of $300 a year. There are about 15 acres of rolling land on the highway, across which there is a hotel and tourist camp. This area is suitable and valuable as building sites and was valued at $6,000 and more. The 100 acres of untimbered land was said to be worth $2500. A lease to a tanning company of eight acres and certain water rights for 10 years from July 1, 1941, yields an average of $250 a

year. In addition $2,000 worth of improvements will revert to the owners of the property at the expiration of the lease. This is what the jury valued at $2500 and the Commission waived. These elements of value combined reach a much larger sum than $20,000 awarded by the jury.

On the other side, it may be said that the cross-examination of the defendants' witnesses lightened the weight of their testimony considerably, both in respect of quantity and quality of the several different elements of value. The evidence of the plaintiff may be summarized as follows: The land is very rough and practically worthless. The deeds to Colson and Ball, made 25 years ago, show the consideration paid was $9,000 only, but the defendants explain that this did not include a one-half interest already owned by the grantees. The property has been returned for taxation at a total valuation of only $1,870. The timber is small and of low grade as the result of being fire-scarred and shaky. There is testimony that Colson had offered to sell all the timber for $4,000 at one time, but he denies it. There is other evidence that it is worth from $6 to $8 an acre. The plaintiff casts suspicion upon the recent sale of a small part of the standing timber at $37 an acre. As to the coal, a mining engineer described it and the rock as standing at almost vertical angles, and testified that there is no continuous seam of coal running through the mountains, the pockets being first one way and then another, and likely to run into a strata of rock. He did not consider the property worth anything as coal land. There had been a little mining in the past ten years, but it was not profitable and had ceased. Previous operations had also proved unprofitable. Evidence pertaining to the sand quarries was equally as depreciative. An adjoining owner had received only $40 to $50 a year from the operation of the sand quarry, and the operator of another had lost $328 in the past year. Concerning the area for building, it was shown by the plaintiff that only four or five acres could be used for that purpose in any event, and that there was and had been no demand for such lots in that vicinity in recent years. The plaintiff's evidence concerning the total value was that it is worth $5 an acre, and that other similar property in the area, including that of Pinnacle Mountain, embracing 281 acres, had been acquired for $7 an acre. Estimates

of value were $7 to $8 an acre. As the testimony of the defendants' witnesses in respect to valuation was weakened by cross-examination, so, too, was that of the plaintiff's witnesses, although perhaps not to the same degree.

We think it apparent from the above resume of the evidence that the question of the market value was one for the jury to determine. The several cases relied upon by the appellant involved small parcels of right-of-way for roads or gas pipe lines, and the amounts awarded on their face were so exaggerated and against common sense and common knowledge that this court was compelled, in the interest of ordinary justice, to reverse the judgments. The amount of the award in this case seems liberal when the evidence as a whole is considered, but the substantial evidence introduced by the landowners, with the basic descriptions of the various elements upon which the opinions of market value were rested, does not authorize us to interfere with the verdict. Bailey v. Harlan County, 280 Ky. 247, 133 S. W. 2d 58.

2. The argument as to the admission of incompetent evidence relates to that of the valuation for building sites, and rests upon the proposition that it was not included in the exceptions to the commissioners' report. The report merely fixed the value of the land and improvements to be taken at $4,374.76, and stated that there was no damage resulting to any adjacent property. The exceptions were in detail, perhaps much more than essential. They stated certain elements of value had not been taken into consideration, but did not include that of suitability of part of the land for building lots. The exceptions, however, did comprehensively charge that the value of the land, excluding the minerals, exceeded $6,193. The appellant relies particularly upon the statement made in Commonwealth v. Combs, 244 Ky. 204, 50 S. W. 2d 497, 499, that: "The appellees are without right to claim items of damages in the circuit court which were not presented by their exceptions in the county court." In that case the owners had not asserted any claim for damages to fencing, but had objected to the report of the value of the property taken and the diminution in the value of the remainder of the tract. There was no claim of damages by reason of fencing being injured or destroyed. There is a difference between admitting evidence to support a claim for specific items

of damage not charged or pleaded and evidence of elements of value entering into the land taken for which a valuation was made. It was so recognized in that opinion, which held it to be proper to admit proof of the value of fruit trees on the land actually taken because that was an incident to the market value of the whole.

As recently said in Skidmore v. Mitchell, 300 Ky. 255, 188 S. W. 2d 434, 435, in respect to the condemnation of a right-of-way for a mining road, triable according to the same statute as this case, Chapter 416, Ky. Revised Statutes:

"Where proceedings in cases of this kind reach the court they are tried de novo, as is declared they shall be by the statute authorizing the proceeding, KRS 381.620, and in the first opinion in this case. They are conducted in general conformity with the proceedings in ordinary nisi prius trials. The pleadings are deemed sufficient if they are of such a character as clearly show the questions arising and give both parties an opportunity to defend their rights. If an issue is made on a particular item, or for a particular cause, by exceptions the effect is to vacate the award. 30 C. J. S., Eminent Domain, section 372. The trial de novo opens up the whole case for a trial on its merits, or at least with respect to the issue made."

It has long been established that an owner may show the adaptability of his property for certain valuable uses, either present or reasonably expected in the future. Miller v. King, 278 Ky. 151, 128 S. W. 2d 621. As said in West Virginia P. & T. R. Co. v. Gibson, 94 Ky. 234, 21 S. W. 1055: "The proper inquiry in each case is, what is its value in view of any use to which it may be applied, and to all the uses to which it is adapted." We think this evidence was properly admitted.

3. At the close of the introduction of evidence by the landowners, the plaintiff moved that the jury be taken to view the property, particularly that along the road. In answer to inquiry by the court several of the jurymen said they were familiar with that part of the property on the highway, and a ruling was withheld. At the conclusion of all the evidence the motion was renewed. The court overruled it because, "the weather was disagreeable; there was snow on the ground and

several of the jurors were old persons; that the transportation would have to be furnished and the jurors would be unable to see any of the land except that adjacent to the road."

The procedural statute provides "upon the request of either party, the jury may be sent by the court, in charge of the sheriff, to view the land or material." KRS 416.050. This authority has been construed, obviously, as have like provisions of the Criminal Code of Practice, Section 236, and of the Civil Code of Practice, Section 318, as vesting judicial discretion in the trial judge, and the rule established that his action in refusing to direct that the jury view the property will not be disturbed except for an abuse. Kentucky & West Virginia Power Co. v. Saulsbury, 231 Ky. 788, 22 S. W. 2d 281. Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision. Cf. Harvey Coal Corporation v. York, 252 Ky. 605, 67 S. W. 2d 977.

The visible conditions of this land had been fully and well described in the testimony, the conflict in respect to the claimed building sites probably resulting from different views as to suitability. That element of value was not a major one. This, taken in consideration with the location and character of the property, and the reasons outlined by the court, certainly do not bring the action of the court anywhere near an abuse of judicial discretion.

Wherefore the judgment is affirmed.