**GOLDEN OAK MINING, COMPANY, L.P., Appellant,**

v.

**KENTUCKY COAL WORKERS' PNEU-MOCONIOSIS FUND; Larry David Cook; Lloyd R. Edens, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 1999–SC–0638–WC.

Supreme Court of Kentucky.

May 18, 2000.

Barkley J. Sturgill, Jr., Fitzpatrick, Osborne, & Sturgill, P.S.C., Prestonsburg, for Appellant.

Robert E. Spurlin, Kentucky Coal Workers' Pneumoconiosis Fund, Frankfort, for Appellee Kentucky Coal Workers' Pneumoconiosis Fund.

George C. Perry, III, Paintsville, for Appellee Cook.

## OPINION OF THE COURT

This workers' compensation appeal concerns a matter of first impression with regard to the obligation of employers to defend claims brought under KRS 342.732 and then to seek participation in payment of the final award or settlement from the Kentucky Coal Workers' Pneumoconiosis Fund (Fund) pursuant to KRS 342.1242 as effective December 12, 1996.

Claimant worked in the coal industry for 14 years. He was last exposed to coal dust on December 26, 1996, while working for the defendant-employer as an underground coal miner. On January 14, 1997, he enrolled in a program of study at the Nashville Auto Diesel College. He expected to complete the program in December, 1997. On February 7, 1997, he filed a claim for benefits for coal workers' pneumoconiosis.

Claimant's evidence consisted of x-ray interpretations from Drs. Myers and Zadeh, both of whom reported category 1/0 disease. Dr. Zadeh reported an FVC of 75% of the predicted normal value and an FEV1 of 57% of the predicted normal value. The employer's expert, Dr. Westerfield, reported category ½ disease. Dr. Joyce, the university evaluator, reported category 0/0.

On August 30, 1997, claimant and the employer agreed to settle the claim. The agreement provided that the employer would pay a lump sum of $6,500.00 and that the claimant would execute an affidavit verifying an adequate source of income for the 104–week compensable period. Pursuant to KRS 342.265, the agreement was submitted to an Administrative Law Judge (ALJ) for approval. In a subsequent order, the ALJ noted claimant's statement that he earned a gross weekly income of $320.00, that he had adequate sources of income to maintain his household, and that a lump sum payment would be more beneficial to him than weekly payments. The ALJ concluded that there was a reasonable assurance of income during the compensable period and, therefore, approved the lump sum settlement.

On October 16, 1997, the employer requested participation by the Fund pursuant to KRS 342.1242 and 803 KAR 25:010, § 29. The Director of the Fund denied the request, stating three reasons for doing so. The Fund asserted that the x-ray interpretations submitted with the application did not meet the requirements of KRS 342.732(1). The Fund's second reason was that the order approving the settlement agreement did not reject the clinical findings of the university evaluator, that those findings must be given presumptive weight, and that the findings which were made did not meet the minimum requirements of KRS 342.732(1). The third reason was that the settlement agreement provided for a lump sum payment and, therefore, was contrary to the provisions of KRS 342.732(1)(a).

The employer appealed the denial to an ALJ. Contested issues included: 1.) whether the Fund's denial of payment was arbitrary, capricious, and in excess of the Director's statutory authority; 2.) whether the employer's settlement of the claim was supported by the medical evidence; and 3.) whether an employer may settle a post-December 12, 1996, claim for a retraining incentive benefit (RIB) for a lump sum

without certifying that the required training was provided and then seek payment from the Fund.

The ALJ noted that public policy favored encouraging the settlement of workers' compensation claims. The ALJ also noted that KRS 342.732(1)(a) provided for periodic benefits, and that the lump sum settlement of claims for future periodic payments continued to be authorized subsequent to the December 12, 1996, amendments to KRS 342.265(2) and (3). The ALJ determined that the medical evidence would have justified the award of a RIB and that there was evidence the claimant was actively participating in a retraining program at the time of settlement; however, the ALJ was not persuaded that findings with regard to those matters were required when approving the settlement. In view of the prima facie evidence of claimant's entitlement to a RIB, the fact that the settlement eliminated further risk with regard to the claim, and the fact that the employer settled the claim for 17% of its potential liability, the ALJ concluded that the Fund's subsequent denial of participation was unreasonable and unfair. *Kentucky National Park Commission v. Russell,* 301 Ky. 187, 191 S.W.2d 214, 217 (1945). The Fund was ordered to reimburse the employer for its half of the liability.

The Workers' Compensation Board (Board) determined that claimant and the employer remained free to enter into a settlement agreement. The Board noted, however, that the Fund was in a fiduciary relationship with all employers engaged in the severance and processing of coal and concluded that the Fund was not required to reimburse the employer for half of the lump sum unless claimant met the statutory criteria for receiving a RIB award, including certification by the employer that the claimant met the relevant statutory criteria. Accordingly, the ALJ's award was reversed and the claim was remanded to the ALJ for further findings.

In a concurring opinion, Board Member Lovan expressed the view that when a denial of participation is being appealed, the employer should be given an opportunity to establish that the worker would have been entitled to an award. The opinion noted that there was evidence of record which would have authorized a favorable finding with regard to every element necessary for a RIB award, although the evidence would not have compelled an award. If a question remained concerning whether the claimant was receiving the necessary 24 hours of weekly instruction, the employer should be given an opportunity to demonstrate that he was. The opinion also indicated that when ruling on the appeal, the ALJ should have addressed the question of the weight to be given Dr. Joyce's clinical findings.

The Court of Appeals affirmed and adopted the view expressed in the concurring opinion at the Board to the extent that the employer should be given an opportunity to establish the existence of grounds which would have justified an award. This appeal by the employer followed.

The Fund was created pursuant to KRS 342.1242(1) as part of the 1996 revision of the Workers' Compensation Act. As explained in KRS 342.1241(1), Special Fund assessments to fund awards of benefits for coal workers' pneumoconiosis under prior law had placed a financial burden on all Kentucky employers. KRS 342.1242(2) explained that the purpose of creating a new Fund was to assure that those employers who engaged in the severance and processing of coal would bear liability for awards pursuant to KRS 342.732 in instances where the worker's last exposure was incurred after December 12, 1996.

Consistent with the foregoing and with KRS 342.1242(3), KRS 342.1242(4)(a) and (b) set forth assessments for funding and prefunding the liability of the Fund and specify that the assessments are the responsibility of those employers engaged in the severance and processing of coal.

KRS 342.1242(1) provides that the director of the Fund "shall be responsible for overseeing the administration and legal representation of the fund and the maintenance of records regarding the payment of claims by the fund." KRS 342.1242(2) provides that the employer shall defend a claim brought pursuant to KRS 342.732 and then seek participation from the Fund in paying the final award or settlement by making a written request to the Director of the Fund in the manner prescribed by regulation. KRS 342.1242(3) provides that the Fund shall bear one-half of the liability for income and RIB benefits for claims brought under KRS 342.732 where the last exposure occurred on or after December 12, 1996. It also provides for the prompt payment of benefits to the worker, with the question of Fund participation being a matter between the employer and the Fund. *See also*, 803 KAR 25:010, § 29(5), (6).

As effective July 17, 1997, 803 KAR 25:010, § 29 provided:

(1) Following a final award or order approving settlement of a claim for coal workers' pneumoconiosis benefits pursuant to KRS 342.732, the employer shall tender a written request for participation to the Kentucky coal workers' pneumoconiosis fund within thirty (30) days. This request shall be in writing and upon a form supplied by the Director of the Kentucky Coal Workers' Pneumoconiosis fund and shall be accompanied by the following documents:

(a) Plaintiff's application for resolution of claim;

(b) Defendant's notice of resistance, notice of claim denial or acceptance, and any special answer;

(c) All medical evidence upon which the award or settlement was based;

(d) Final benefit review determination, opinion, or order of an arbitrator or administrative law judge determining liability for benefits, or order approving settlement agreement. If an adminis-

trative law judge's award was appealed, appellate opinions shall be attached;

(e) If the request for participation includes retraining incentive benefits under KRS 342.732, the employer shall certify that the plaintiff meets the relevant statutory criteria;

(f) If the request for participation is for settlement of a claim, the employer shall certify that the settlement agreement represents liability for benefits in the claim, and does not include any sums for claims which the plaintiff may have against the employer.

(2) Within thirty (30) days following receipt of a completed request for participation, the director shall notify the employer and all other parties of acceptance or denial of the request.

(3) A denial may be made upon a finding by the director that the employer failed to defend the claim or entered into a settlement agreement not supported by the medical evidence or which was procured by fraud or mistake. Denial shall be in writing and shall state the specific reasons for the director's action.

(4) Denial of a request for participation may be appealed to an administrative law judge within thirty (30) days following receipt. The administrative law judge shall determine whether the denial was arbitrary, capricious, or in excess of the statutory authority of the director, but shall not reexamine the weight assigned to evidence by an arbitrator or administrative law judge in a benefit review determination or award.

(5) The employer shall promptly commence payment on all of the liability pursuant to the benefit review determination, award, or order and shall continue until the liability of the Kentucky Coal Workers' Pneumoconiosis fund is established. This duty of prompt payment shall continue during pendency of an appeal from denial of a request for participation.

(6) Upon an appeal from the denial of a request for participation, if the Kentucky Coal Workers' Pneumoconiosis fund does not prevail, it shall reimburse the employer for its proportionate share of the liability together with interest at the rate set forth in KRS 342.040.

As effective December 12, 1996, KRS 342.732(1)(a) authorizes the award of a RIB in instances where there is x-ray evidence of category 1 or 2 disease and spirometric test values which equal or exceed 55% but are less than 80% of the predicted normal values as contained in the latest edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment.* Direct payments to the worker are authorized for a period of up to 104 weeks of enrollment and active and successful participation in a bona fide training or education program, as a full-time student, taking 24 or more hours of instruction per week. Direct payment is prohibited if participation in the training or education program ceases or if the individual is working in the mining industry. Up to $5,000.00 in tuition and material costs is payable to the institution providing training or education. If the worker completes the training or education program in fewer than 104 weeks and accepts a bona fide offer of employment at a location more than 50 miles from his usual residence, he is entitled to be paid relocation expenses in a lump sum equal to the lesser of $3,000.00 or any unpaid weekly benefits.

■ As noted by the ALJ, there is a strong public policy favoring the settlement of workers' compensation claims. *See Newberg v. Weaver,* Ky., 866 S.W.2d 435 (1993); *Newberg v. Sarcione,* Ky., 865 S.W.2d 317 (1993). It is undisputed that, as to the parties, the agreement between claimant and the employer to settle the claim for a lump sum is consistent with public policy and authorized by Chapter 342 provided that the agreement is approved by an ALJ as required by KRS

342.265. What is at issue is the effect of an agreement between a worker and an employer on the liability of the Fund. Also at issue are the requirements for obtaining participation by the Fund in instances where the worker and employer have agreed to settle a RIB claim, including whether Fund participation is authorized when the settlement involves the payment of a lump sum.

■ In defending its rejection of the employer's request for participation, the Fund has argued that KRS 342.732(1)(a) contemplates the payment of a lump sum only in instances where the worker relocates. The Fund has asserted that it is not required to participate in the lump sum settlement of a RIB claim because such an arrangement is not consistent with KRS 342.732(1)(a). We note, however, that this same argument could apply to the lump sum settlement of any claim involving periodic payments and conclude that the Fund's participation in the lump sum settlement of a RIB claim is not prohibited by Chapter 342 or by regulation. As noted by the ALJ, KRS 342.265(2) and (3) clearly contemplate the lump sum settlement of claims for periodic benefits.

KRS 342.1242(4)(a) makes it apparent that the financial interests represented by the Fund are those of all employers engaged in the severance and processing of coal on or after January 1, 1997. Although KRS 342.1242(3) imposes upon the Fund half of the liability for benefits awarded in claims brought under KRS 342.732 for last exposures on or after December 12, 1996, the Fund does not participate in litigation of the claim or in settlement negotiations. Instead, KRS 342.1242(2) provides that the employer "shall" defend the claim and later seek participation from the Fund.[1] We note, however, that although they bear much in common, the interests of the employer and of the Fund are not entirely consistent. We are aware of no provision

---

1. 803 KAR 25:010, § 29(1) requires the employer to seek the Fund's participation within 30 days of a final award or the order approving a settlement.

which provides for the Fund to share in the cost of the defense; thus, it appears that although the Fund derives benefit from the defense, the employer bears the entire cost. On the other hand, when conducting a defense, an employer is aware that it will be responsible only for half of the ultimate liability and that it will bear the entire cost of the defense, factors that would be expected to affect the extent to which the employer would be willing to defend against a meritorious claim or its eagerness to settle a particular claim. When seeking participation from the Fund, the burden is on the employer to comply with the requirements of 803 KAR 25:010, § 29 which appear to be aimed at protecting the interests of the Fund.

803 KAR 25:010, § 29(3) authorizes denial of an employer's request for participation by the Fund upon a finding that it "failed to defend the claim or entered into a settlement agreement not supported by the medical evidence or which was procured by fraud or mistake." When requesting participation by the Fund, the employer must submit the claim and a number of other documents, including all of the medical evidence upon which the award or settlement was based. No exception is made for those claims which are settled. The Board and the Court of Appeals have determined that, in instances where a claim is settled, the ALJ who approves the agreement between the worker and employer is not required to make findings that the presumptive weight of the university evaluator's testimony has been overcome or that the worker is currently enrolled in a training or educational program as required by KRS 342.732(1)(a). We agree. They have also determined that a settlement between the worker and employer does not necessarily require participation by the Fund. Where the participation of the Fund is sought, the employer must certify that the award complies with the requirements of KRS 342.732(1)(a). Again, we agree.

In *Magic Coal Co. v. Fox*, 19 S.W.3d 88, which we have rendered today, we determined that KRS 342.315(2) created a rebuttable presumption that the clinical findings and opinions of a university evaluator accurately reflected the condition of the claimant. We also determined that the presumption could be overcome by substantial evidence that the worker's condition was other than the university evaluator had indicated. In instances where an ALJ chose to reject the clinical findings and opinions of the evaluator, the only requirement was that a reasonable basis for doing so must be stated. Applying 803 KAR 25:010, § 29(3) and the decision in *Fox* to the present facts, we conclude that although an approved agreement is binding on the parties, the Fund may not be required to participate in a settled RIB claim unless there is prima facie medical evidence of record which would authorize a RIB award.

803 KAR 25:010, § 29(1)(e) requires the employer to certify that a worker receiving a RIB "meets the relevant statutory criteria" and makes no exception for those RIB claims which are settled. In view of the requirement that all medical evidence be submitted with the request for participation, documenting the existence of prima facie evidence to authorize a RIB award, we perceive that the purpose for requiring certification by the employer is to provide some assurance that the worker also has met the other requirements set forth in KRS 342.732(1)(a) for receiving a RIB. We conclude, therefore, that the Fund may not be required to participate in a settled RIB claim unless the employer so certifies.

In summary, an approved agreement between a worker and employer to settle a claim brought under KRS 342.732 constitutes a final award which is binding as to the parties but does not necessarily require participation by the Fund. The Fund may be required to participate in the payment of a RIB claim which is settled for a lump sum in instances where the

employer complies with the requirements set forth in 803 KAR 25:010, § 29; where the record contains prima facie medical evidence which would support an award; and where the employer has certified that the worker has complied with the requirements set forth in KRS 342.732(1)(a).

In the instant case, although the ALJ determined that there was prima facie evidence to support an award, the employer failed to provide the required certification. Under those circumstances, we conclude that the Fund's denial of the request for participation was not arbitrary and that the ALJ erred in requiring participation by the Fund. In view of the fact that this is a matter of first impression where the parties and the ALJ were unclear about precisely what was required, we are persuaded that the employer should be given an opportunity upon remand to provide the certification required by 803 KAR 25:010, § 29(1)(e).

The decision of the Court of Appeals is hereby affirmed, and the claim is hereby remanded to the ALJ for further proceedings as set forth in this opinion.

All concur.