**Antwan Ladale HAYES, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 2009–SC–000087–MR.

Supreme Court of Kentucky.

Aug. 26, 2010.

As Corrected Sept. 14, 2010.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Jason Bradley Moore, Assistant Attorney General, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Antwan Ladale Hayes, was sentenced to twenty years' imprisonment after he was convicted in the Hardin Circuit Court of second-degree manslaughter and first-degree criminal abuse. He appeals that conviction to this Court as a matter of right. Ky. Const. § 110(2)(b). For reasons explained below, we affirm the Hardin Circuit Court.

## I. *Background*

Because Appellant seeks relief from three rulings detached from the facts of this case—one concerning voir dire and one concerning a motion to suppress the fruits of a search warrant—we find a full recitation of the events giving rise to this appeal unnecessary. However, for further clarity of the issues below, we elaborate on the events surrounding the rulings complained of by Appellant.

On August 6, 2008, one day before trial, Appellant moved the trial court to suppress the fruits of a search warrant issued to search his home, alleging that the affidavit supporting the warrant contained intentionally or recklessly false statements and that the affidavit omitted a material fact. The trial court denied the motion.

The next day, the court's assigned panel of seventy-six prospective jurors appeared for trial. Out of those, thirty-six were drawn as the initial panel for voir dire. The following day, the trial court informed the parties that an additional ten jurors had just completed service in another division of the Hardin Circuit Court, and would be added to the court's panel. Appellant objected. In overruling the objection, the trial court noted that the ten jurors had been properly selected and qualified. The judge then decided to hold them out of the full panel temporarily, but seated them in the courtroom, in an attempt to "avoid the issue" reasoning that

the ten jurors might not be needed if the jury was completed before exhausting the court's full beginning panel. Appellant objected again, arguing that the exposure and atmosphere for these ten jurors would not be the same because voir dire had already begun. The judge overruled this objection.

Ultimately, however, the ten were required as the trial court exhausted its original panel. At that point, the trial court informed the parties that it would add the ten jurors. Appellant objected, this time arguing that his right to a randomly selected jury would be affected and that such a process would be a substantial deviation from the prescribed jury selection process in this Commonwealth. In overruling the objection, the trial court found that the ten jurors had been randomly selected by the Administrative Office of the Courts (AOC), that they were a part of the total court pool, and that the only thing not random was holding them out until the full beginning panel had been exhausted. The judge also noted that there was no manipulation because "nobody did this on purpose." Ultimately, Appellee exercised a peremptory challenge on one of the ten jurors.

In addition, before these jurors were added, Appellant had moved to strike another juror, V.S., for cause, reasoning that because she had been "beat" by her sister on at least two occasions, she had suffered a crime too similar to that for which Appellant was accused and she was therefore unqualified to serve. This challenge was denied. Appellant again moved to strike V.S. for cause when she revealed that she was a relative of someone allegedly murdered by followers of Charles Manson. This challenge was also denied and V.S. was seated on the jury.

Following the rendering of a guilty verdict, Appellant was sentenced to twenty years' imprisonment. This appeal followed.

## II. *Analysis*

### A. The Venire

Appellant first argues that his right to a randomly selected jury was compromised by the addition of the ten additional jurors to the court's panel. He further argues that by adding these ten jurors, the trial court substantially deviated from the jury selection process controlled by the statutes and the Rules of Criminal Procedure in this Commonwealth. In essence, Appellant suggests that the trial should have been continued and extra jurors selected and summoned anew from the master list in court. RCr 9.30(1)(c); Administrative Procedures of the Court of Justice, Part II, Section 3.

#### 1. Substantial Deviation

■ We first address Appellant's argument that the trial court deviated from procedures governing the jury selection process. The selection and regulation of jurors is controlled in part by RCr 9.30 which provides:

(1)(a) In a jury trial in circuit court the clerk, in open court, shall draw from the jury box sufficient names of the persons selected and summoned for jury service to compose a jury as required by law. If one or more of them is challenged, the clerk shall draw from the box as many more as are necessary to complete the jury.

(b) If there is an irregularity in drawing from the jury box, the names of the jurors so drawn shall be returned to the box.

(c) When it appears that the names in the jury box are about to become exhausted, the judge may obtain additional jurors by drawing from the drum, or,

with the consent of the parties, by ordering the sheriff or a bailiff appointed by the court to summon any number of qualified persons.

(2) The jury-selection process shall be conducted in accordance with Part Two (2) of the Administrative Procedures of the Court of Justice.

However, KRS 29A.060 also reflects on the appropriate use of jurors, providing in pertinent part:

(2) Any petit juror assigned to a judge of Circuit or District Court may be used by any other judge of any other branch or division of Circuit or district Court when jurors are needed.

This statutory provision is echoed in Part II, Section 10(5) of Administrative Procedures of the Court of Justice (Section 10(5)), which reads:

In the event that all of the cards [the jurors] are exhausted before a jury is chosen, the judge shall ascertain whether jurors who have been assigned to another courtroom are available. Jurors assigned to any district or circuit court may be used in any other division when jurors are needed.

Admittedly, over the years, we have allowed RCr 9.30 and applicable statutes and our Administrative Rules of Procedure regarding jury selection to drift apart by the insertion and use of differing language. However, interpreting RCr 9.30, and other statutes regulating the selection of juries in this Commonwealth, we have held that when a court, over the objection of any party, substantially deviates from these procedures, it commits a structural error deserving appellate correction. *Robertson v. Commonwealth*, 597 S.W.2d 864, 865 (Ky.1980). We corrected such an error[1] in *Robertson v. Commonwealth*, where the trial court called jurors during voir dire in order of their assigned number, and replaced each stricken juror with the next juror in line, sequentially.[2] *Id; see also Allen v. Commonwealth*, 587 S.W.2d 264 (Ky.App.1979) (where the Kentucky Court of Appeals corrected an identical error to that in *Robertson*, supra). We found the *Robertson* procedure to be a substantial deviation from the then established procedures because it equipped the parties with the ability to manipulate their strikes to obtain a particular person. *Id.* Our predecessor Court, interpreting KRS

1. In *Robertson*, the Court addressed RCr 9.30(1)(a) and KRS 29A.060, a now superseded statute, which provided in pertinent part:
 (2) To select a grand jury or a petit jury in circuit court, the clerk shall:
 (a) Draw forty (40) names at random from the jury wheel;
 (b) List the names, in the order drawn, from one (1) to forty (40);
 (c) Place forty (40) numbered balls in a box and shake the box;
 (d) Draw the required number of balls, dependent on the number of jurors required plus alternates, from the box and record the number of each ball as it is drawn.
 . . . .
 (4) The names corresponding to the numbers on the balls which have been drawn shall constitute the petit jury. When alternate jurors are permitted the last ball or

 balls drawn, as the case may be, will represent the alternate jurors.
 (5) As jurors are excused and new jurors are required additional balls shall be drawn from the box, one (1) for each juror required, until all of the balls in the box have been exhausted.
 (6) In the event that all of the balls in the box have been exhausted the box shall be refilled utilizing the process required by subsection (1) to (4) of this section.

2. Using the *Robertson* procedure, the trial court seated jurors 1 through 13. Where any of the 13 were stricken their replacement was provided by the next in line, number 14. After that, any subsequent juror stricken was replaced with juror number 15 and so on, sequentially.

29.280(1),[3] also found a substantial deviation requiring reversal where the trial court turned to that statute's alternate jury selection process before completing its primary steps. *Conner v. Denney,* 521 S.W.2d 514 (Ky.1975).

In any event, we find this case more analogous to cases where we found no deviation, rather than where we have. In *Copley v. Commonwealth,* we found no deviation where an existing pool of prospective jury members was merged with more members the day before trial, holding that there is no requirement that the initial pool *be exhausted* before adding prospective jury members to the pool. 854 S.W.2d 748, 750 (Ky.1993) (emphasis added). We have also approved of the Kentucky Court of Appeals' opinion in *Asher v. Commonwealth,* where it found no error in a trial court's refusal to wait for the addition of jurors deliberating on another case before commencing voir dire in a new trial. *Copley,* 854 S.W.2d at 750 (*citing Asher v. Commonwealth,* 614 S.W.2d 249 (Ky.App. 1980)). Moreover, in our most recent decision on the issue, we found no error where a trial court "added" a venireman to the panel after he was inadvertently left out of the selection process, even though voir dire had already begun. *Campbell v. Commonwealth,* 260 S.W.3d 792 (Ky.2008).

With these guiding principles in mind, we turn to the question of whether the trial court substantially deviated from the prescribed jury selection procedures when it added the ten jurors from another division of the same circuit to its panel. In answering this question in the negative, we consider the jury panel contemplated by RCr 9.30 to encompass the entire jury pool for the trial courts of a particular jurisdiction, not just the members of one panel assigned for operational and management purposes to a particular court. Thus, because the jurors added during the trial below were at all times part of one jury pool subject to the use of a unified court system in Hardin County, we find that no deviation occurred. *James v. James,* No. 2008–SC–000163–DG, 2010 WL 2016520, *4 (Ky. May 20, 2010) (holding the judicial system in this Commonwealth is one system designed to operate efficiently in the attainment of fairness and justice). *See generally Baze v. Commonwealth,* 276 S.W.3d 761, 767 (Ky.2008).

Our holding that a trial court does not deviate from the prescribed jury selection procedures when it adds jurors from another division to its jury panel derives from a review of RCr 9.30 as a whole, as well, as the instruction RCr 9.30(1)(c) provides to a court facing a nearly exhausted panel, which reads in pertinent part:

3. KRS 29.280(1), a now superseded statute, but one similar to the rule in RCr 9.30 provided in pertinent part:

"At the time of selecting the petit juries from the list of names drawn from the drum for that purpose, if there fail to attend or be excused by the court for good cause, such a number as will not leave the number of jurors required, the judge shall draw from the drum, in open court, double the number of names to supply the places of those excused and those failing to attend, and the jurors so drawn shall be summoned by the sheriff. If any of those so drawn and summoned are likewise excused or fail to attend, the judge shall again draw from the drum, in open court, double the number of names to supply their places, and so on until the requisite number is obtained. If at any time during the term it becomes necessary to supply one or more jurors, double the number of names necessary for supplying their places shall be drawn from the drum and summoned by the sheriff. If the number of vacancies does not exceed three (3), the judge may direct the sheriff to summon bystanders to supply the vacancies, instead of drawing additional names from the drum."

*Conner v. Denney,* 521 S.W.2d at 515.

(1)(c) When it appears that the names in the jury box are about to become exhausted, the judge may obtain additional jurors by drawing from the drum, or, with the consent of the parties, by ordering the sheriff or a bailiff appointed by the court to summon any number of qualified persons.

RCr 9.30(1)(c). RCr 9.30 in its instructions, is referring to the summoned and available jury pool, which from day to day in a multi-faceted court system varies depending upon the needs of the several trial courts.[4] It contemplates more than the exhaustion of one trial court's operating panel. It would be an odd rule indeed if it required one court to summon new jurors while there remain available for use other jurors in the pool who are not the at the time in service with another trial court of the county. That is clearly not the intent of the rule.

The initial separation of the jury pool and subsequent assignment to a certain division of one court is for operational management purposes only, so that each division or court may draw from a panel without waiting for another to complete its selection from an at-large pool.[5] This does not mean that a court cannot utilize those other jurors when available.

Indeed, we recognize that court divisions are created for operational and management purposes. Thus, we conclude that when the citizens are summoned for jury service, they are for a county's court system as one judicial system and not just for one division or court. Therefore, simply because the ten jurors were active beforehand in another division does not mean that they cannot properly be added to the panel used by a different court or division of the same jurisdiction.[6] Accordingly, we hold that a jury pool remains one pool for each trial court jurisdiction not just for one judge or court.

Having concluded that the ten jurors who were "added" to the initial panel were at all times a part of its jurisdiction's jury pool, we hold that the trial court did not deviate from RCr 9.30 by adding them.

## 2. Randomness

 Appellant also claims that the trial court affected the randomness of the jury selection process by holding the ten members back until needed, so that their names would be drawn from last. The Commonwealth responds that because these prospective jury members were a part of the randomly selected pool the randomness is not affected.

At first blush, Appellant's argument seems to have merit. By holding out the ten potential jurors so that their names were drawn upon last, it seems the trial court somewhat altered the randomness of the selection process. Indeed, we have considered the intentional nature of similar actions, particularly where a class of people has been purposefully excluded. *See*

---

4. Under RCr 9.30(1)(c) a court that is about to exhaust its panel must turn to unsummoned individuals by either drawing from the drum (which included only unsummoned individuals) or, with the agreement of the party, by ordering the sheriff or a bailiff appointed by the court to summon qualified persons (again, unsummoned individuals).

5. This is not a substantial deviation from the rules and statutes governing jury selection. It is such as was intended.

6. We do not mean to say that the new jurors added to the panel after voir dire has begun should not be subjected to the same questioning as those already empanelled. We take this opportunity to instruct trials courts to subject new jurors, who are added after voir dire has commenced, to such questioning as experienced by those already empanelled—as the parties, or either of them, desire.

*Partee v. Commonwealth,* 652 S.W.2d 89 (Ky.1983). We also considered whether the trial court's behavior was intentional in *Campbell,* where we held that a prospective jury member inadvertently left out of the selection process may be added back to the panel, having been persuaded by the fact that there was no evidence that his name was left out as a result of "an intentional act to reserve him for last." 260 S.W.3d at 798. Here, the trial court left the ten jurors out of the selection process until it exhausted its initial panel. Yet, given the meaning of the` term "randomness," we conclude it was not affected in this instance.

In *Williams v. Commonwealth,* the Kentucky Court of Appeals defined randomness to mean "at no time at all, will anyone involved be able to know in advance, or manipulate, the list of names who will eventually compose the empanelled jury." 734 S.W.2d 810, 812 (Ky.App.1987). We have previously endorsed that rule, and apply it here. *See Hodge v. Commonwealth,* 17 S.W.3d 824, 840 (Ky.2000); *Wagers v. Commonwealth,* No. 2001–SC–0807–MR, 2003 WL 21357605, *1 (Ky. June 12, 2003).

However, by later adding the ten names to the panel when it needed them, the trial court did not create a situation where anyone would be able to know the names of the members that would eventually compose the jury. Those specific names were not pre-selected by the trial court. The ten jurors added near the end of the selection process had been randomly selected by the AOC, and had been previously serving on another jury panel with the other division of the circuit court. And once added, they were subsequently subjected to voir dire like all the other members.

Far from analyzing this case based on statistics, we note that the court's actions did not give those ten jurors any better chance to serve on the panel than it would for additionally new jurors summoned as per RCr 9.30(1)(c)'s alternative methods of jury selection. Indeed, all of the ten members could have been stricken for cause, and may have never taken their seat on this jury had there been appropriate reasons.

It appears to us that under normal circumstances where a trial court deliberately segregates a portion of the jury pool so as to intentionally manipulate the composition of the jury panel, such an action would give rise to error. However, we do not have that here. The motive behind the trial court's act of holding these jurors until they were actually needed was in response to Appellant's objection and on the chance that they would never be needed, not to intentionally alter the composition of the jury.

For the abovementioned reasons, we hold that there was no reversible error in the jury selection process in this case.

### 3. Juror V.S.

██ Appellant next argues that the trial court erred by not striking juror V.S. on two separate occasions: first, when V.S. notified the court that her sister had "beat" her when the two were around the age of fifteen to seventeen; and, second, when V.S. notified the court that she was related to someone allegedly murdered by followers of Charles Manson.

The Commonwealth asserts that the trial court did not abuse its discretion because V.S. stated that the two incidents would not affect her judgment in this case.

██ Under RCr 9.36(1) a motion to strike for cause must be granted where there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence. This Court will not disturb a trial court's

ruling on this issue unless that court abuses its discretion. *Ratliff v. Commonwealth,* 194 S.W.3d 258, 265 (Ky.2006). In determining whether a court abuses its discretion we consider whether that court's decision is arbitrary or capricious under the circumstances. *Kentucky Nat'l Park Com'n v. Russell,* 301 Ky. 187, 191 S.W.2d 214 (1945). And where a trial court makes findings of facts regarding a juror, that decision is reviewed under a clearly erroneous standard. *See Shane,* 243 S.W.3d at 338. Applying these rules, we have held that the mere fact that a potential juror has been the victim of a similar crime alone is insufficient to warrant removal for cause. *Bowling v. Commonwealth,* 942 S.W.2d 293, 299 (Ky.1997); *Richardson v. Commonwealth,* 161 S.W.3d 327, 330 (Ky. 2005).

Here, Appellant argues that V.S. was not qualified to sit as a juror because she did not "unequivocally" state that she would not be affected by the "fight" with her sister. Relying on our holding in *Richardson,* Appellant argues that an unequivocal statement is required before a trial court can determine that a victim who has suffered a similar crime [7] may serve as a juror.

The Commonwealth responds by arguing that the trial court's decision was not an abuse of discretion where V.S. testified that neither the fight nor the murder of her relative would affect how V.S. would evaluate the evidence or how she would judge this case. We agree.

■ Appellant's reliance on *Richardson* is misplaced. In *Richardson,* we dealt with the issue of whether a juror could sit in a case where the defendant is charged with a crime similar to that previously suffered by the subject juror. In answering the question in the affirmative, we noted that the subject juror never "made [any] statements indicating that she had any bias or preconceived opinions of Appellant's case." *Id.* at 331–332. And while it is true that we were influenced by the fact that the juror in that case "unequivocally stated" that she could impartially decide the case, we also reiterated the long-standing rule that the trial court is in the best position to evaluate a juror's demeanor and answers during voir dire. *Bowling,* 942 S.W.2d at 300; *see also Whalen v. Commonwealth,* 891 S.W.2d 86 (Ky.App. 1995) *overruled on other grounds by Moore v. Commonwealth,* 990 S.W.2d 618 (Ky.1999). Thus, even though we found the unequivocal statement influential in *Richardson,* we never concluded it to control as determinative. We did not mean there, nor do we hold here that a juror must utter magic words before a trial court can determine the probability of bias or prejudice. *Richardson,* 161 S.W.3d at 330. We reiterate that "[i]t is the *probability of bias or prejudice that is determinative* in a ruling on a challenge for cause," and we will not disturb a trial court's ruling on this issue absent an abuse of its discretion. *Id.* (emphasis added).

Turning to the case at bar, we observe that V.S. never made any statements indicating that she had any bias or preconceived opinions about this case. She in fact stated that neither the altercation she had with her sister nor the fact that her relative was allegedly killed by a member of the Manson "family" would influence her ability to serve. And even if we were to take V.S.'s statement that she "didn't think" she would be affected by her previous altercation with her sister in a vacuum, the trial court's ultimate interpretation of that statement controls unless clearly erro-

---

7. Appellant was convicted of second-degree manslaughter and first-degree criminal abuse after being charged in the death of six year old M.L., the child of Appellant's girlfriend.

neous. *See Shane v. Commonwealth,* 243 S.W.3d 336, 338 (Ky.2007) (issues of fact are reviewed under a clearly erroneous standard). Here, having the best view of V.S.'s demeanor, the trial court found that the two subject instances would not affect V.S.'s ability to serve distinguishing the altercation with her sister and the murder of her relative from the case being tried. We cannot say under the facts of this case that the trial court abused its discretion.

## B. Search Warrant

■ Appellant last argues that the trial court committed reversible error by refusing to suppress evidence procured via an unconstitutional search warrant. He urges this Court to find that the affidavit used to support the warrant contained a material omission or intentionally or recklessly *false* statements.

The Commonwealth responds by noting that Appellant failed to meet its burden at the suppression hearing in the court below and has failed to meet that burden here. We agree with the Commonwealth.

■ When a defendant attacks the fruit of a search warrant based on the premise that the information supplied to the issuing magistrate is inaccurate, he must move the trial court to suppress the evidence in a hearing required by RCr 9.78. At that hearing, the defendant is required to show that: (1) the affidavit contains intentionally or recklessly *false* statements, and (2) the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause. *See Commonwealth v. Smith,* 898 S.W.2d 496, 503 (Ky.1995) (*citing Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)). The defendant must carry the same burden where he asserts that the information supplied to the magistrate omitted material facts. *Smith,* 898 S.W.2d at 503. An appellate court in this Commonwealth will review

the trial court's findings of fact on appeal, and affirm them where they are supported by substantial evidence. *Commonwealth v. Neal,* 84 S.W.3d 920, 923 (Ky.App.2002).

Appellant complains that the affidavit provided to the judge issuing the search warrant in this case produced an unconstitutional warrant because (1) the affidavit contained the intentionally and recklessly *false* statement that "Social Services had an open case on [Appellant] for physical abuse on the same victim child from three months ago;" and (2) the police intentionally omitted from it the fact that Social Services did *not* have a currently open case on Appellant.

Appellant argued before the trial court that there was not an open case with Social Services when the affidavit was sworn and that the police recklessly or intentionally led the issuing judge to the opposite conclusion by using the phrase "had an open case." In that same vein, Appellant also argued that the police omitted the fact that there was not an open case at the time the affidavit was sworn. The trial court disagreed, reasoning that the statement "says pretty clearly that the case was from three months ago," and found that the statement did not lead the issuing judge to believe that there was an open case at the time the affidavit was sworn. We now address the correctness of that decision.

Appellant urges us to find that the phrase "had an open case" led the issuing judge to believe that there was a current, active and presently open case on Antwan Hayes. Appellant further asks us to hold that by not informing the judge that the case on him was closed, the police intentionally omitted a material fact. We find these inquiries superfluous and refuse to address them because we are unable to determine whether there was an open case on Appellant at the time the affidavit was

sworn and thus we cannot first determine, as we must, whether that statement was false. Therefore, even if we assumed, arguendo, that the statement "had an open case" led the issuing magistrate to believe there was indeed an open case on Appellant, the record reveals no evidence of the falsity of that statement. Appellant has not met his burden. *See State v. Smith,* 397 So.2d 1326 (La.1981).

We refuse to agree with Appellant on the issue of whether "had an open case" produced an unconstitutional warrant since we are provided with no evidence regarding the accuracy of that statement. Conjecture without evidence will not be considered, especially where it is not first presented to the trial court and subsequently provided to us on appeal. *Piper v. Piper,* No. 2008–CA–000588–MR, 2009 WL 2408377, *6 (Ky.App. Aug. 7, 2009). Having found that Appellant has not demonstrated that the affidavit contained false statements, our analysis of whether the trial court erred by not suppressing the evidence is ended. We find no error.

### Conclusion

For the aforementioned reasons, we affirm the Hardin Circuit Court.

All sitting. All concur.